**LAUGHLIN et al. v. BERENS.**

No. 7603.

United States Court of Appeals for the District of Columbia.

Decided Dec. 23, 1940.

James J. Laughlin, of Washington, D. C., for appellants.

Elmer E. Cummins and Douglas A. Clark, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from an order of the District Court dismissing the complaint for injunction against enforcement of a Municipal Court judgment, for accounting and for other relief.

The case arises from a series of real estate transactions as a result of which the issue presented on the merits in the trial court was whether a conveyance of the property by plaintiffs to defendant was absolute or merely a mortgage in legal effect. This issue, however, was not de-

termined by the lower court, which dismissed the complaint pursuant to an understanding reached during the trial for entry of a so-called consent decree for the defendant in case the plaintiff should fail to make specified payments at an agreed time. The case comes to us upon a statement of evidence drawn by plaintiff James J. Laughlin, which under Rule 75(c), (h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, we must accept, since defendant has filed no objections to it.

Because the case must be reversed for another reason, it is not necessary to decide the issue on the merits presented below. However, a statement of the facts from which the case arises will be helpful toward understanding the disposition which must be made of it.

Early in 1937 plaintiffs James J. Laughlin and John E. Laughlin, together with their sister, Gertrude Laughlin, purchased a house in the District of Columbia, making a down payment of $2,500 and securing the remainder ($9,000) of the purchase price with a deed of trust arranged by defendant as agent for a loan company. Payments on the loan became delinquent early in 1939 and foreclosure was threatened. To avoid foreclosure, an arrangement was made whereby plaintiffs deeded the property to defendant and plaintiff James J. Laughlin continued to occupy the premises as tenant, paying a rental of $100 per month. Plaintiff James J. Laughlin testified that defendant suggested this arrangement, agreeing orally that the rental contract should be only nominal, that the "rent" should be applied on current and delinquent purchase instalments, and that plaintiffs should regain the property if at the end of a year they had made all back payments and paid foreclosure costs. Defendant testified that plaintiffs suggested

conveyance of the property to him to save the expense of foreclosure, and denied having made any agreement to reconvey the realty.[1]

The "rental" payments became delinquent and defendant began landlord and tenant proceedings in Municipal Court. Plaintiffs filed a plea of title there, but apparently were unable to furnish satisfactory bond to have the action certified to the District Court, pursuant to D.C. Code (1929) tit. 18, § 228. Judgment was entered for the present defendant and plaintiffs commenced the present suit to enjoin enforcement of the judgment.

At the close of plaintiffs' evidence the trial court refused to dismiss the complaint, stating that he felt plaintiffs had made out a case. After defendant's testimony, which is referred to above, a colloquy among the parties and the court revealed that defendant was willing to reconvey the property if plaintiffs would make the disputed payments. Plaintiff James J. Laughlin stated that he did not then have the money, but that he could obtain it within a few days. He was given four days until December 8, 1939, to get the money and pay defendant, the court stating, "If it is not paid by Friday morning [December 8] at 9:45 I will have to sign an order dismissing the complaint."

Friday morning, December 8, plaintiff appeared before the trial judge and the following occurred:

"Mr. Laughlin: Your Honor I am sorry to say but I do not have the money at the moment. It is due to circumstances beyond my control. But it is on the way and will be here perhaps by noon. I suggest this and I think it is very fair. Let this matter go over until Monday—this is Friday —If the money is not paid by Monday morning at 9:45 I will ask no further time

---

[1] Plaintiffs introduced, as tending to prove the existence of the oral agreement to reconvey, a purported statement of the amount due under the agreement as allegedly drawn up by one of defendant's assistants, and also the following letter:

"Dear Mr. Berens:—

"There is inclosed $105.25 to cover rent and court costs. These figures were given to me by Mr. Cummins this AM. Will have the $820. by Nov. 15th per our agreement. Please send receipt

by bearer, if I am correct.
"Very truly yours,
"(Signed) James J. Laughlin.
"Receipt of above acknowledged Oct. 3/39
"F. W. Berens."

Defendant contended below that this receipt referred only to the enclosed money, and did not acknowledge the existence of the oral agreement; but the trial court apparently considered this significant evidence of the existence of the agreement since the receipt made no disclaimer of it.

and will relinquish all further claim to the property. In fact I will sign a stipulation now to that effect.

"The Court. If I was the other side I would certainly accept that proposition. You certainly can't be harmed by waiting until Monday.

"Mr. Clark. I object to any continuance. I want the order signed now.

"Mr. Laughlin. As you know this is an equity matter. No harm can come to the defendant. He has nothing to lose by waiting until Monday but I will be harmed if the order is signed now.

"The Court. As I told you if I was the other side I would accept your proposition and wait until Monday but I will have to sign the order if he insists upon it.

"Mr. Laughlin. But this is an equity matter. Your Honor regardless of anything said heretofore had discretion in matters of this kind—particularly when the delay is due to circumstances beyond my control. All courts have inherent powers to grant continuances.

"The Court: But if he insists I will have to sign the order. I am sixty two years old and never yet have I broken my word.

"Mr. Laughlin. But this is a different matter. You have a right in a case of this kind. There was no agreement or stipulation signed in writing on Monday. You can see yourself the money is on the way and will perhaps be here by noon.

"The Court: Suppose you go outside Mr. Laughlin and let me talk with Mr. Clark. (Mr. Laughlin withdrew and in a very short time was recalled and the following occurred)

"The Court: He insists that I sign the order and I will have to do so.

"Mr. Laughlin: Well suppose you wait until 12:30 at least.

"The Court: He has insisted that I sign and I must do so.

"Mr. Laughlin. Well then if Your Honor must sign it suppose then you grant me supersedeas as I will appeal at once to the Court of Appeals.

"The Court: If you attempted to appeal that would almost amount to virtual contempt of this court.

"Mr. Laughlin: In my judgment the statute permits an appeal from any final order and this certainly would be a final order.

"The Court: But you can't appeal this. This is final.

"Mr. Laughlin: Suppose you do this—since it is a matter of such grave importance to me—wait until 12:30 and give me the opportunity to give you authorities to show that you do have the right to grant supersedeas or that I have the right to appeal to the Court of Appeals. I am certain I can convince you of my point.

"The Court: No you can't appeal. I am sure of that.

"Mr. Laughlin: Then in that case Your Honor since I feel so sure of my right to appeal to the Court of Appeals won't you acknowledge service of a petition for a writ of supersedeas that I have prepared or acknowledge service on a petition for a writ of prohibition that I have prepared and then withhold your order until noon and give me a chance to file either or both of these in the Court of Appeals.

"The Court: No I won't acknowledge service on either. You can't appeal. I am absolutely sure of that."

Thereupon, at about 10:00 a. m., the order dismissing the complaint and vacating the restraining order was signed. The record contains a statement that about forty-five minutes later plaintiff James J. Laughlin appeared in the chambers of the trial justice and exhibited to his secretary "advice from the Western Union Telegraph Company that the money had arrived," that the secretary informed the trial justice concerning this, but reported that he would make no change in the order.[2]

From the foregoing it is apparent that the order was entered, not because the trial court in the exercise of its discretion as a court of equity thought this should be done, but rather for the reason that it considered itself bound by the oral stipulation for entry of the decree at the specified hour, in case of plaintiffs' failure to make payment then or prior to that time. In effect the court refused to exercise its own discretion, and entered the order upon the insistence of defendant's counsel that this

[2] Although defendant has filed no objections to this statement of what occurred, in his brief he states that he does not know whether plaintiff notified the trial justice on the morning of December 8, 1939, after the order was entered that the money had arrived.

be done, although at the same time it indicated and reiterated its judgment that counsel should allow the matter to go over to the following Monday. If the court had power to disregard the stipulation, its action constituted refusal to exercise its own independent judgment upon the application for the continuance, and was therefore in the legal sense arbitrary.[3]

■■■ It is settled that a court cannot be deprived by stipulation of its power to give equitable relief. Hence, wherever justice requires a court may set aside a stipulation.[4] "Such agreements may go far towards informing the court's discretion; but it has inherent power, in the control of its own action, to relieve against them when made improvidently or when for any cause their enforcement would work injustice." Palliser v. Home Telephone Co., 1911, 170 Ala. 341, 54 So. 499, 500. The power to set aside extends to time stipulations. Palliser v. Home Telephone Co., supra; Borgman v. Bultema, 1920, 212 Mich. 70, 179 N.W. 347. It follows that the trial court had power to grant a further extension of time for making the payments despite the stipulation entered into by the parties. This required that it exercise its discretion judicially, not for reasons clearly personal or otherwise legally insufficient.

■■■ No adequate reason was assigned for the court's action. The only ones given were the insistence of counsel that the order of dismissal be entered and a sense of personal honor which forbade breaking the given word. Neither suffices. The former merely substitutes counsel's judgment for the court's, an abrogation not permissible. The latter feeling we may share in a personal way, but it was misplaced in this setting. That is implied from the very existence of power to disregard the agreement. Furthermore, it was in no way a personal one. As to the court, qua court, it was purely official, and therefore conditioned from its inception by the qualification that rigid observance or modification in the interest of a due administration of justice

would be determined in the exercise of judicial, not personal, discretion. There was therefore no possibility that either personal or judicial honor would be violated by granting the extension, if that were justified by the showing made. By this we do not mean that the court was bound to grant the continuance, but only that it was bound to exercise its independent judgment without surrender to that of counsel or regard for considerations not binding on the judicial conscience.

That the showing was sufficient to call for the exercise of that judgment is clear. The extension requested was short, involved no real chance of harm to defendant, its denial in effect foreclosed all rights of the plaintiffs, and the good faith of the request was demonstrated by plaintiff's offer to sign a stipulation that he would ask no further time and make no further claim to the property if the money were not paid within the extension. That these things would have been persuasive with the court, if it had felt free to give effect to them, appears from its statements that if it were in the position of defendant's counsel it would consent to the continuance, and from the reasons assigned by it for this view.

From these facts and all that appears in the record, we think the only permissible conclusion is that the court considered itself either without power to grant the extension or foreclosed from doing so by considerations of personal honor which were not involved. In either event the court was prevented by an erroneous conception of the law from exercising its judicial discretion, and in the legal sense its action in entering the order of dismissal was arbitrary.

■■■ It is unnecessary for us to express an opinion upon the issue which was presented upon the merits, but was not determined below. Only one other contention need be noted, namely, that this court has no jurisdiction to hear this appeal, on the ground that no appeal may be taken from a consent decree. The argument ap-

---

[3] Davis v. Davis, 1938, 68 App.D.C. 240, 96 F.2d 512, 514, and cases there cited, reversed on other grounds, 1938, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518.

[4] Brast v. Winding Gulf Colliery Co., 4 Cir., 1938, 94 F.2d 179; Federal Export Corp. v. United States, Ct.Cl.1939, 25 F.Supp. 109, certiorari denied, 1939, 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494;

Palliser v. Home Telephone Co., 1911, 170 Ala. 341, 54 So. 499; Capano v. Melchionno, 1937, 297 Mass. 1, 7 N.E.2d 593; Borgman v. Bultema, 1920, 212 Mich. 70, 179 N.W. 347; Foote v. Adams, 1931, 232 App.Div. 60, 248 N.Y. S. 539; Payton v. Rogers, 1939, 66 S.D. 486, 285 N.W. 873; Stevenson v. Hazard, 1929, 152 Wash. 194, 277 P. 450.

parently reflects the view expressed by the trial court in the colloquy set forth above that the plaintiffs could not appeal from the order which it entered. This probably reflected in another form the court's view that it was bound by the agreement and further that this court also was bound by it. Enough has been said to show the error in this. But, further, we do not consider the cases cited by defendant to sustain this argument as being applicable to the present situation. Those cases hold that no appeal may be had as to legal points necessarily waived by consent to the decree. Ganss v. Goldenberg, 1912, 39 App.D.C. 597; United States v. Babbitt, 1882, 104 U. S. 767, 26 L.Ed. 921. They are not applicable where, as here, the question for decision is whether the trial court gave improper effect to a consent or stipulation of the parties. In other words, the question in this case is whether the "consent" decree should have been entered at all, not whether as entered it erroneously disposed of the legal issues involved in the trial.

During the pendency of the appeal, defendant filed a motion here for dismissal of the appeal and affirmance of the order below. In view of the disposition which we have made of the appeal, the motion is denied.

The order is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.