Buffington, Appellant, *v.* Buffington.

150

Argued May 24, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Jesse P. Long,* for appellant.

*John K. Myers,* with him *Robert M. Dale,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 28, 1954:

The appeal raises the question whether a chancellor in a proceeding for the dissolution of a partnership may, in his discretion, set aside his decree made in accordance with a written agreement, signed by both parties and their counsel, directing a receiver to sell the partnership assets. The Chancellor set aside the sale and rescinded the decree because one of the partners asserted that he misunderstood the effect of his written agreement and stipulation. There was no allegation of omission because of fraud, accident or mistake. This appeal followed.

From the portion of the record not printed in this appeal it appears that on or about November, 1945 Herman L. Buffington, plaintiff, and John K. Buffington, defendant, entered into an oral agreement of partnership for the manufacture of commercial refrigeration equipment and metal fabrication. Plaintiff contends that he possesses a two thirds interest and that the defendant only holds a one-third interest. The defendant denies this and asserts that he is a full one-half owner. But the *extent* of ownership is not before us and we expressly refrain from passing upon such question at this time.

On January 13, 1953, plaintiff filed a complaint in equity seeking dissolution of the partnership, the appointment of a receiver to temporarily continue the business, to sell same "as a going concern" to wind up the affairs of the partnership, to pay all partnership bills, to conduct an audit and accounting of partnership assets, etc., to ascertain the interests of the partners and to make distribution. An answer was filed by defendant. Plaintiff made a motion for judgment. On June 26, 1953, the court decreed that the partnership, being one at will, was dissolved. A re-

ceiver was appointed. This was in compliance with Section 31 (1) (b) of the Uniform Partnership Act, Act of March 26, 1915, P. L. 18, part VI, 59 PS §93 (1) (b).

On July 6, 1953, plaintiff petitioned the court for an order on the receiver authorizing and directing him *". . . to hold a private auction sale of all of the tangible and intangible assets, property, rights, patents and privileges of whatsoever kind of* [the partnership], including the good will of said business, said auction to be attended solely by Herman L. Buffington and John K. Buffington, the respective partners thereof, and their respective counsel, that at said sale all of the assets and property of said partnership be offered at auction to the said two partners and sold to the partner who, after competitive bidding, agrees to and actually does pay the highest price therefor, said sale to be held within a reasonable period of time after the date of the presentation of this Petition, upon such terms as to security and payment as [the] Court may see fit." (Italics supplied)

Following the petition, on July 10, 1953, upon the written approval of both plaintiff and defendant, also signed by the respective counsel of both parties, the court made the following order:

"1. [The] Temporary Receiver, shall hold a private auction sale of all the tangible and intangible assets, property, rights, patents and privileges of whatever kind of [the partnership], at the plant of the partnership located in Punxsutawney, Pennsylvania, on July 17, 1953, at 10:00 o'clock, A.M., Eastern Daylight Saving Time.

"2. At such sale the upset price of all such assets and property shall be $150,000.00 and bidding by the respective partners shall begin at that amount.

"3. The bidding at such sale shall be conducted by [the] Temporary Receiver, and bidding shall be confined to the two partners.

"4. The successful bidder at such sale shall pay to the Receiver at the conclusion thereof a sum equivalent to ten (10) per cent. of his bid.

"5. The balance of purchase money shall be paid to the Receiver on or before August 1, 1953, at 12:00 o'clock Noon, Eastern Daylight Saving Time.

"6. The successful bidder shall be entitled to a credit against the purchase price, as if paid, of twenty (20) per cent. of the entire gross amount of his bid, which shall be charged against the distributive share of said successful bidder upon distribution.

"7. If the successful bidder fails to pay the balance of his bid at the time and in the manner above stated, he shall forfeit the sum of Five Thousand ($5,-000.00) Dollars, which amount shall be deducted from his distributive share at the time of distribution and be paid to the unsuccessful bidder at the original sale.

"8. If the successful bidder at the original sale fails to pay the balance of his bid at the time and in the manner above stated, the unsuccessful bidder at said sale shall have an option for a period of ten days from August 1, 1953 to purchase all of said assets and property for a sum equivalent to the highest amount bid by such unsuccessful bidder at said original auction sale. Such amount shall be paid to the Receiver by the unsuccessful bidder at said original sale, less a credit of twenty (20) per cent., within said period of ten days.

"9. In the event of a sale to either partner in the manner herein provided, [the], Temporary Receiver, is hereby authorized, empowered and directed to make, execute, acknowledge and deliver any and all bills of sale, deeds, assignments or other written instruments

required to pass title to all the tangible and intangible assets and property of said partnership *without further Order of Court.*

"10. If neither of said partners purchases said assets and property at said sale or thereafter in the manner above stated and within the time stated, the Receiver shall promptly report the fact to the Court and abide by the further Order thereof.

"11. The Temporary Receivership and the powers heretofore vested in the said [the], Temporary Receiver, shall continue and remain in force pending the execution of this Order or until further Order of the Court, and such Receiver is hereby empowered and directed to continue the business of the partnership as heretofore. (Italics supplied)

BY THE COURT

(s)  Robert M. Morris
————————————
President Judge

"AND NOW, July 10, 1953, it is agreed by and between John K. Buffington and Herman L. Buffington and their respective counsel that the foregoing Order be made and entered as of this date.

(s)  John K. Buffington
————————————
John K. Buffington

(s)  Mottey & Prothero

(s)  by Francis J. Mottey

(s)  Donald J. Dennison

(s)  Raymond E. Brown
————————————
Attorneys for John K. Buffington

(s)  Herman L. Buffington
————————————
Herman L. Buffington

(s)  Jesse P. Long
————————————
Attorney for Herman L. Buffington."

On July 31, 1953, the receiver reported to the court that on July 17, 1953, he conducted the sale as directed and that plaintiff's bid of $184,000 was the highest. The property was sold to plaintiff. The plaintiff paid and the receiver accepted ten per cent. on account of the sale, which amounted to $18,400.00 and was duly deposited by the receiver.

On July 28, 1953, an attorney for defendant wrote a letter to the receiver in which he asserted that there existed a misunderstanding between the parties and their counsel. That "[i]t was the understanding of [defendant] and his counsel that the liabilities of the [partnership] were assumed by [plaintiff] and were included in his bids, . . ." Because of such letter the receiver in his report, supra, stated "That word has come to the attention of the Receiver that there exists a misunderstanding between [the parties] and their counsel . . ." He further reported, and it is conceded, that plaintiff made a legal tender of the balance of the purchase price on July 30, 1953.

Following the receiver's report the court fixed a hearing for August 10, 1953. Following such hearing an order, dated August 12, 1953, was filed by the court conditionally setting aside the sale and ordering a resale. It was stated: ". . . it appears that a misunderstanding or mistake of fact did and still does exist between the parties relative to the payment of the accounts payable of the [partnership]—whether they should be assumed and paid by the partner purchasing the business or paid by the Receiver out of the funds realized from the sale of said business;

"That the Stipulation and Order of this Court, dated July 10, 1953, was dictated and agreed to by counsel for the respective parties in an attempt to facilitate the sale of the property 'as is' or as a 'going concern' to the partner bidding the highest price there-

for and not in liquidation of the partnership or the assets thereof;"

The order further directed: ". . . in clarification of such misunderstanding, if the [plaintiff] shall notify the Receiver in writing . . . that his bid or offer of $184,000.00 for all the tangible and intangible assets, property, rights, patents and privileges of whatever kind of [the partnership] includes an obligation on his part to assume and pay all accounts payable incurred by the [partnership] in the normal operation of the business prior to and during the receivership, the Court will, upon application of the Receiver, confirm the sale of July 17, 1953, to the said [plaintiff]." Plaintiff refused to comply with said order and on August 20, 1953, petitioned the court for an order directing the receiver to complete the sale and for an order setting aside the order for a resale. Answers were filed to this petition. On March 12, 1954, the court filed its opinion and dismissed plaintiff's petition. This appeal followed.

A reading of the testimony does not disclose that the alleged understanding was omitted from the written stipulation signed by the parties and their respective counsel through fraud, accident or mistake. The petition for the sale, followed by the court's order, was *"to hold a private auction sale of all the tangible and intangible assets, property, rights, patents and privileges of whatsoever kind of [the partnership], including the good will of said business, . . ."*

The effect of the court's order of August 12, 1953, followed by its opinion of March 12, 1954, was to annex to the above order of sale an additional provision, viz.: *"that [plaintiff's] bid or offer of $184,000.00 . . . includes an obligation on his part to assume and pay all accounts payable incurred by the [partnership] in the normal operation of the business prior to and dur-*

*ing the receivership, . . ."* (Italics supplied) In the absence of proof of omission it is indeed difficult to comprehend how such an additional provision can be added to the written agreement and stipulation approved by the court and signed by litigants and their counsel.

Apparently the court made its order upon two grounds (a) the agreement and stipulation was based upon an attempt to facilitate the sale of the property "as is" or as a "going concern"; (b) the Chancellor had discretionary power over the confirmation of sales by a court appointed receiver.

Nowhere in this record does it appear that plaintiff was purchasing defendant's *interest* in the partnership. On the contrary, the court stated that he dissolved the partnership business, appointed a receiver and directed *a sale of the partnership assets under the provisions of the Uniform Partnership Act.* Upon a sale of partnership assets, the Act provides how the fund realized shall be distributed: Act of March 26, 1915, P. L. 18, part VI, sec. 40, 59 PS 102. "When dissolution is caused in any way, . . . each partner, . . . may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners . . . .": Act of 1915, supra, sec. 38 (1), 59 PS 100 (1).

The partnership was wholly solvent and the rights of creditors are not involved. The two partners—the only ones in interest—made an agreement in the form of a stipulation, quoted verbatim herein, whereby they agreed what should be sold and how the auction should be conducted. Counsel for the parties joined in the stipulation which was approved by the court and upon which the court entered its order. In the leading case of *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791, which has since been cited in a host of cases too

numerous for citation, this Court held that where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence. In that case Justice SCHAFFER (later Chief Justice) said (p. 325) : "We have stated on several occasions recently that we propose to stand for the integrity of written contracts: Wolverine Glass Co. v. Miller, 279 Pa. 138, 146; Evans v. Edelstein, 276 Pa. 516; Neville v. Kretzschmar, 271 Pa. 222. We reiterate our position in this regard." As late as *Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85, Mr. Justice BELL stated (p. 491) : "We have repeatedly said and we reiterate that we intend to uphold the integrity of written instruments . . ." Since there is an absence of allegation or proof of omission through fraud, accident or mistake and since all preliminary negotiations, conversations or verbal agreements are merged in, and superseded by, the subsequent written agreement or stipulation, any asserted misunderstanding as a basic reason for the execution of the written document cannot be considered.

Neither may the order of sale be cancelled and annulled on the ground that this was a proper exercise of the court's discretion in refusing to confirm the sale by a court appointed receiver. In this case, because of the agreement, we need not enter such field. The stipulation and agreement upon which the order of sale of July 10, 1953, was made, not only provided by what method the auction should be conducted, but

what was being sold and how the purchase price should be paid and, in specific terms, provided that the receiver, after such sale, ". . . is hereby authorized, empowered and directed to make, execute, acknowledge and deliver any and all bills of sale, deeds, assignments or other written instruments required to pass title to all the tangible and intangible assets and property of said partnership *without further Order of Court.*" (Italics supplied) It follows that the court was without authority to set aside the sale so agreed to by the interested parties and approved by the court itself.

The order appealed from is reversed and the court is directed, upon payment of the balance of the purchase money, to make an appropriate decree directing the receiver to make the necessary transfer of title of assets to plaintiff and to revoke its order setting aside the sale, in accordance with this opinion. Costs to be paid by appellee.