Universal Builders Supply, Inc., Appellant, v. Shaler Highlands Corporation.

Argued October 4, 1961.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*John A. Metz, Jr.*, with him *Guy L. Warman*, and
*Metz, Cook, Hanna & Kelly*, for appellant.

*John F. Gloeckner*, for appellee.

*William L. Jacob*, with him *William L. Jacob, Jr.*,
for intervening appellee.

OPINION BY MR. JUSTICE BENJAMN R. JONES, No-
vember 14, 1961:

The instant appeals, involving three Pennsylvania
corporations, question the propriety of an order of the
Court of Common Pleas of Allegheny County which
made absolute a rule to stay an execution on a judg-
ment and, by the same order, disposed of a petition and
rule to open judgment without affording an opportu-
nity for answer or hearing.

On July 13, 1957, Shaler Highlands Corporation
(Shaler), owning 37 acres of land in Shaler Township,

Allegheny County, and desirous of developing the same, entered into an agreement with Universal Builders Supply, Inc. (Universal) whereby Universal was to advance to Shaler not more than $50,000 in exchange for a $90,000 mortgage.[1] Pursuant to this agreement Universal advanced to Shaler only $18,978.95. Differences thereafter arose between the parties and Universal decided to foreclose, at which time, August 14, 1959, Shaler instituted an equity action to restrain the contemplated foreclosure and seeking other relief. Following the taking of testimony and negotiations, a *consent decree* was entered which provided, inter alia: ". . . It is ordered and decreed that Shaler Highlands Corporation, plaintiff, shall pay to Universal Builders Supply, Inc., defendant, the sum of Twenty-nine thousand ($29,000) Dollars within sixty days from the date of this order and in addition interest at the rate of six per cent per annum, Shaler to have the privilege of anticipating the entire amount or any part thereof. *In the event payment is not made as herein provided, Universal Builders Supply, Inc., shall have the right to proceed on its mortgage covering properties of plaintiff without further delay.*" (Emphasis supplied.)

Shaler failed to pay the agreed sum, or any part thereof, within the sixty day time limit which expired on December 20, 1960 and on December 23, 1960, Universal entered judgment by confession and issued execution thereon against Shaler on the mortgage bond for $58,978.95 plus interest at 4% from July 13, 1957 ($8,633.40) and attorneys' commission of $3,380.62 or a total of $70,993.05.[2]

---

[1] This agreement granted Universal $40,000 or an 80% bonus. The amount of the mortgage was to be repaid on the sale of lots; $2,000 on each of the first thirty lots sold and $1,500 on each of the next twenty lots conveyed.

[2] This total amount was the amount previously claimed due by Universal in its counterclaim against Shaler in the equity action instituted by Shaler on August 14, 1959.

On January 6, 1961, Shaler executed an agreement of sale covering the mortgaged property to North Hills Homes & Development, Inc. (North Hills) for the sum of $40,000. On January 9, 1961, North Hills tendered the sum of $29,000 to Universal in satisfaction of the judgment but Universal refused the tender. Thereafter, on February 3, 1961, North Hills, not then a party to the proceedings, petitioned for a stay of execution and prayed for a rule on Universal to show cause why it, Universal, should not be required to accept the sum of $29,000 plus interest and costs in satisfaction of the judgment. Universal responded to the petition denying that North Hills had any standing to assail the execution and further alleging that, under the consent decree, Universal was free to proceed on its mortgage and was not required to accept the $29,000 in satisfaction thereof.

On February 16, 1961, the court permitted North Hills to intervene nunc pro tunc as a party defendant in the execution proceedings. On April 19, 1961 the court heard argument on the petition, answer and depositions.

Shaler on May 15, 1961 petitioned the court for a rule to show cause why the judgment should not be opened which rule was granted by the court. Universal never received nor was it given notice that the rule was granted, although the record discloses that it was given notice that the petition for the rule was to be presented. No answer was filed nor was there ever a hearing or argument on this rule.

On May 17, 1961, the court below filed an opinion and order making absolute the rule granted on petition of North Hills to stay the execution and ordering Universal to accept the sum of $29,000 plus interest at 6% from October 20, 1960 and to satisfy the judgment. This action of the court was premised on its conclusion that, under *Cochrane v. Szpakowski,* 355 Pa. 357, 49 A. 2d

692, it had the power to extend the time for performance provided in the consent decree and that under the authority of *Sinking Fund Commissioners of Phila. v. Philadelphia,* 324 Pa. 129, 188 A. 314, it had the power to modify the consent decree. Believing it possessed such power and concluding further that it would be unconscionable to permit Universal to receive a $40,-000 bonus where it had advanced but $18,978.95, the court modified the consent decree and required Universal to accept the compromise sum of $29,000 even though the time specified for payment in the decree had expired or passed. This order is the subject of Appeal No. 185.

On the same date the court endorsed upon its order granting the rule on Universal to show cause why the judgment should not be opened, a notation to see the opinion and order filed in the matter of North Hills' petition to stay the execution. The reason for this action of the court is explained in the court's opinion: "The same facts are made the basis for relief in the latter petition, and the same reasons for granting or refusing the relief requested are equally applicable in the two matters. Since Shaler has now directly attacked the judgment entered, the question as to whether or not North Hills is a proper party in interest is moot. The opinion disposing of the petition filed by North Hills will likewise determine the issues raised by Shaler." From this somewhat informal order disposing of Shaler's petition and rule, Universal has taken Appeal No. 227.

Universal presently contends: (1) that North Hills lacked standing to attack the judgment by a petition for a stay of execution and that the court below erred in permitting it to so attack the execution; (2) that the court below was without power or authority to modify the consent decree and require Universal to accept the sum stated in such decree after the specified

time for payment had expired; and (3) that the procedure followed in disposing of Shaler's petition and rule to open judgment was a denial of due process in that it wiped out Universal's judgment without permitting Universal to have its day in court.

It has been stated that before one, not a party of record, can be heard to challenge the execution process issued on a judgment, he must obtain leave to become a party by application based on sufficient grounds: *Lietka v. Hambersky*, 167 Pa. Superior Ct. 304, 307, 74 A. 2d 698. It is obvious that this procedure was not followed in the instant case. However, the record does reveal that North Hills was permitted to intervene nunc pro tunc, and while we do not approve of such practice, the facts reveal that North Hills did have an interest in the subject matter and also that the judgment had been attacked directly by Shaler.

Under these facts and circumstances we find no reversible error in this respect.

We turn now to Universal's principal contention, i.e., that the court below had neither the power or authority to modify the consent decree. The consent decree provided that Universal was to have the right to proceed on its mortgage without further delay if the sum of $29,000 was not paid by Shaler within sixty days. The record reveals that, while the court below recognized that the $29,000 figure was a compromise sum and that as such the decree did not permanently fix the amount due Universal, it extended the time limit specified in the decree for the tender of payment. This extension granted by the court was based on its conclusion that (1) the parties or the court could have just as well inserted ninety days as sixty days in the original decree, and (2) that there was neither a manifestation or implication in the decree that time was of the essence. In this respect the court erred.

The consent decree in the instant case was, as the court below recognized, a compromise agreement. As such it bound Universal to accept the sum specified in satisfaction of the judgment *if payment were made within sixty days*. The fact that the parties or the court could or originally might have made the time limit ninety days rather than sixty days is immaterial—the contract and the agreement between the parties specified sixty days. The compromise agreement was the entire agreement of the parties and it was not divisible. It required satisfaction of the judgment not only upon payment of the $29,000 but also if, and only if, paid within the specified time. The time specified for payment was as integral and important a part of the compromise as was the specified amount. Examined in this light it becomes evident that time was of the essence of the agreement and the court had no power to extend it. Indeed, the court had no power or authority to modify the consent decree in any manner.

Neither the provisions of Pa. R. C. P. 3183(c), which permits the court in an order staying execution to impose such terms or conditions as it deems appropriate nor the general or inherent powers of a court to control its process confer authority upon a court to modify a consent decree.

A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties thereto to the terms thereof: *Dulles v. Dulles,* 369 Pa. 101, 107, 85 A. 2d 134. As a contract, the court, in the absence of fraud, accident or mistake, had neither the power nor the authority to modify or vary the terms set forth. These principles were recognized, approved and applied in *Buffington v. Buffington,* 378 Pa. 149, 106 A. 2d 229.

In *Buffington,* plaintiff instituted an action seeking dissolution of his partnership with the defendant and

the sale of the partnership as a going concern. Subsequently a consent decree was entered providing for a private sale of the *assets* of the partnership. Plaintiff, outbidding the defendant, then purchased the partnership assets at the sale. Defendant then petitioned to set the sale aside on the grounds that there was a misunderstanding as to the terms of the sale—contending, in this regard, that he understood that the purchaser was to assume the liabilities of the partnership. The lower court set aside the sale and ordered a resale in which the purchaser would assume the liabilities of the partnership. On plaintiff's appeal, following the court's refusal to set aside its order for a resale, this Court declared that the consent decree was a contract which provided for the sale of the assets and not the liabilities, and that, after the sale, title was to be passed "without further order of court", and that the court below was without authority to set aside the sale and modify the decree agreed to by the parties and approved by the court itself.

North Hills seeks to distinguish *Buffington* on the ground that there the petition was not filed until after the sale was completed and urges that, if the petition had been filed prior to the sale, the result might have been different. The error in this contention is that the determination in *Buffington* was premised upon the fact that this decree was a contract. It was the same contract before and after the sale. We see nothing to merit the assumption that, if the petition had been filed prior to the sale, the court would have modified the decree.

Nor do we find the case of *Cushman & Denison Mfg. Co. v. Grammes,* 234 F. 952, relied upon by North Hills, apposite. First, in that case the court did not in fact modify the decree and, second, it erroneously analogized the right of a court to modify a consent decree with the right of a court to open judgment. This is

not the law in Pennsylvania. Cf: *Winter v. Welker,* 174 F. Supp. 836. The other cases cited by North Hills do not involve consent decrees.

The clear and unequivocal provisions of the consent decree providing for the payment of $29,000 within sixty days or Universal was free to proceed on its mortgage "without further delay" were agreed to by Universal and Shaler and approved by the court. Accordingly we are convinced for the reasons previously set forth that the court was without authority to extend the time limit specified in the decree and/or so modify the decree. Its attempt to do so was error and that part of the order staying the execution which requires Universal to accept the sum set forth in the decree in satisfaction of the judgment is reversed.

Since the disposition of Shaler's petition and rule to open judgment is based upon this error, that order must also be reversed.

Our present determination and disposition is not to be construed as sustaining the contention of Universal that it is entitled to proceed without further delay with its execution and collect the full amount of the judgment. On the contrary, we are in full accord with the conclusion of the court below that "It would be inequitable to allow this judgment to stand".

Our only determination in this appeal is that to the extent that the court's order is based on the consent decree it is erroneous. That decree was nothing more than a contract—a compromise agreement—which has expired. Any equitable determination must therefore be based not on such a decree but upon proceedings fully considering and adjudicating the respective rights of the parties.

We are of the opinion that any such equities can be fully determined by the court in the proceeding to open judgment wherein it can fully consider all the facts

and circumstances and make a determination independent of the expired consent decree.

Order reversed. Costs to abide the event.