Arthur GOOZH, et al., Appellants,

v.

CAPITOL SOUVENIR CO., INC., et al., Appellees.

No. 81–1480.

District of Columbia Court of Appeals.

Argued June 8, 1983.

Decided July 14, 1983.

Gary A. Stein, Washington, D.C., with whom Philip N. Margolius and Carla J. Smith, Washington, D.C., were on briefs, for appellants. Peter B. Krauser, Washington, D.C., also entered an appearance for appellants.

Robert N. Levin, Washington, D.C., for appellees.

Before NEWMAN, Chief Judge, and TERRY, Associate Judge, and KELLY, Associate Judge, Retired.

KELLY, Associate Judge, Retired:

Appellants are fifty percent shareholders of the issued and outstanding stock of Capitol Souvenir Co., Inc. (CAPSCO), a District of Columbia corporation; appellees own the remaining fifty percent of those shares. After appellants filed suit for corporate dis-

solution, the parties agreed to the appointment of an auditor-master. By order dated January 31, 1980, the trial court approved the appointment of the master as well as a stipulation of the parties which authorized the master, *inter alia,* to rule on all legal issues which might arise during the proceedings and to make findings of fact which would be deemed presumptively correct and binding on the parties, unless shown to be clearly erroneous.

Upon commencing his review, the master requested, and the parties agreed to, the services of an accountant to place in order the books of the corporation. Following receipt of the accountant's report and with the assistance of the master, the parties reached a settlement which was to be effected through the redemption by CAPSCO of appellants' shares, leaving appellees as the sole remaining stockholders. In entering a stipulation of settlement to this effect, the parties expressed their understanding "that the dismissal [of the underlying suit for dissolution] would be subject to the payment of the master's fees as well as the accounting fees after the master determined who was to be responsible for such fees."[1]

In his final report, the master stated his findings of fact and made several recommendations to the court. One of these recommendations was that the accountant's fees be split between the parties according to the relative gain each derived therefrom—ninety percent to be paid by CAPSCO and ten percent to be paid by appellants. According to the master's findings, CAPSCO benefited substantially from the accountant's review. Its books were reviewed for mistakes and placed in good order, thereby protecting its good name and its future business interests. Appellants, in turn, benefited by receiving access to the corporate books which they had not received for a long time and which facilitated the preparation of schedules necessary to the petition for dissolution.

Appellees, the prospective sole owners of CAPSCO, filed with the trial court an objection to this recommendation claiming it was unfounded on the evidence. Appellants filed an opposition. The trial court, after a hearing, affirmed the factual findings of the master as presumptively correct and not clearly erroneous. It did not adopt the master's recommendations, however, declaring them to be inconsistent with the findings. The court found that all the problems which the accounting presumably remedied were problems of the corporation—an entity owned both by appellants and appellees and equally shared by all. It stated, "In all fairness, these costs, when the accounting was done on the accrual basis, should have been included. It [sic] should have been part of the bookkeeping for purposes of settlement." Viewing the proposed settlement as effecting a fifty-fifty split of the corporate assets, the court assessed the accountant's fees equally between the parties.

In this appeal from that assessment of costs, appellants contend that the trial court ignored the stipulation of the parties by which the findings of the master were presumed correct unless clearly erroneous and further assumed incorrectly that the parties reached a fifty-fifty split of the corporation in settlement. We conclude that the court erred in not adopting the master's recommended assessment of the accounting fees to which the parties stipulated they would be bound. Accordingly, we reverse and remand for an allocation of these costs consistent with the recommendations set forth in the master's final report.[2]

1. The parties' understanding that the master would determine their respective responsibility for these fees was embodied in a joint letter, dated April 24, 1981, from the master to counsel for the parties which all parties as well as their respective counsel ultimately signed in acknowledgment and approval of the contents.

2. We disagree with appellees' claim that, at the hearing on their exceptions, the master admitted that he had erred in the manner in which he allocated the accounting costs. Read in proper context, we view the master's remarks as indicating his latent realization that the settlement process would have been simplified, and the

We start with the premise that "[i]n this jurisdiction, it is well established that settlement agreements are entitled to enforcement under general principles of contract law...." *Brown v. Brown,* 343 A.2d 59, 61 (D.C.1975) (per curiam). Indeed, "[t]he law favors the settlement of controversies, and a valid and binding agreement of compromise and settlement will be enforced as any other contract." *Rommel v. West American Insurance Co.,* 158 A.2d 683, 684–85 (D.C.1960). *Accord Proctor v. Ward,* 83 A.2d 281 (D.C.1951).[3] "Although a court may set aside a stipulation wherever justice requires, parties generally are bound by their stipulations, and a stipulation deliberately entered into by parties for final disposition of their controversy ought not to be lightly set aside." *Maiatico v. Novick,* 108 A.2d 540, 541 (D.C.1954) (footnote omitted) (citing *Laughlin v. Berens,* 73 App.D.C. 136, 118 F.2d 193 (1940)).

In a civil action, matters properly subject to stipulation by the parties are myriad so long as the resulting agreement "affects neither the court's jurisdiction— that is, does not attempt to create jurisdiction where there would otherwise be none— nor the court's due order of business or convenience." *Kardibin v. Associated Hardware,* 284 Pa.Super. 586, 597, 426 A.2d 649, 655 (1981). *Accord Zvonik v. Zvonik,* 291 Pa.Super. 309, 435 A.2d 1236 (1981); *Foote v. Maryland Casualty Co.,* 409 Pa. 307, 186 A.2d 255 (1962) (any matter which involves the individual rights or obligations of the parties inter se).[4] Once entered, the agreement between the parties becomes the law of the case, *Foote v. Maryland Casualty Co., supra,* 409 Pa. at 312, 186 A.2d at 258, and its terms may not be enlarged or diminished by the court, *Liberty Bank for Savings v. Armstrong, supra* note 4, 36 Conn. Supp. at 631, 423 A.2d at 173, for to do so would be to create a new stipulation to which the parties have not agreed. *See Maiatico v. Novick, supra,* 108 A.2d at 541.[5]

need for that hearing obviated, had he assessed these costs before the parties entered their stipulation of settlement.

**3.** Therefore, under contract law, to create a valid settlement agreement, there must be an offer and an acceptance and the agreement must be supported by consideration. *Rommel v. West American Insurance Co., supra,* 158 A.2d at 685. Although the issue is not contested by the parties, we note that dismissal of an underlying cause of action constitutes valid consideration. *See id.*

**4.** Hence, in addition to other matters, parties may stipulate to the extent of their damages, *e.g., Rommel v. West American Insurance Co., supra* (plaintiff's damages arising from defendant's negligence in causing automobile accident); *Liberty Bank for Savings v. Armstrong,* 36 Conn.Supp. 629, 423 A.2d 171 (1980) (per curiam) (mutual concession of damages in action on promissory note and counterclaim for violations of Truth in Lending Act); *Foote v. Maryland Casualty Co., supra* (pretrial stipulations as to minimum damages), to the means to be employed in calculating their damages, *e.g., Smith v. State Highway Board,* 130 Vt. 317, 292 A.2d 814 (1972) (damages in condemnation proceedings to be determined as of a time other than the customary date of taking); *Hayes v. State,* 109 N.H. 353, 252 A.2d 431 (1969) (exclusion of evidence regarding comparable sales in suit for damages from taking by eminent do-

main), to the submission of specific interrogatories to the jury, *e.g., Harris v. Clinton,* 142 Conn. 204, 112 A.2d 885 (1955) (having stipulated for the submission of a specific interrogatory, parties are bound by jury's verdict thereto), as well as to having their rights to an administrative appeal determined according to the outcome of an independent, pending judicial proceeding. *E.g., Kasten Construction Co. v. Anne Arundel County,* 262 Md. 482, 278 A.2d 282 (1971) (appellant validly stipulated to be bound by the decision of the Anne Arundel County Circuit Court in a similar yet unrelated proceeding).

**5.** The proposition that a court is not bound by a master's recommendations which appellees assert in support of the trial court's actions is here inapplicable. The facts of the case cited by appellees for this proposition, *D.M.W. Contracting Co. v. Stolz,* 81 U.S.App.D.C. 334, 158 F.2d 405 (1946), *cert. denied,* 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947), do not demonstrate that the parties there had agreed to be bound by a master's report. Indeed, the issue for resolution there was whether the trial court erred in requiring a successor auditor to base his findings on evidence taken by his deceased predecessor. In responding negatively, the circuit court reasoned that, since the district court was the ultimate decision maker, the report of the auditor was merely advisory to it.

In the case before us, to the contrary, the salient dispositive fact is that the parties volun-

In the instant case, the parties entered into a valid stipulation by which they agreed, among other things, to have the master determine who was to be responsible for the respective fees of the master and the accountant.[6] Pursuant to the authority vested in him through this stipulation, the master assessed his own fees equally between the parties and the accountant's fees ninety percent to appellee CAPSCO and ten percent to appellants. This authority was not limited by the stipulation in any way, nor was its exercise subject to court approval. The parties as well as the court, accordingly, were bound thereby. *See Rommel v. West American Insurance Co., supra; Maiatico v. Novick, supra.*

The decision of the Pennsylvania Supreme Court in *Buffington v. Buffington,* 378 Pa. 149, 106 A.2d 229 (1954), buttresses our conclusion. There, the court ruled that a chancellor in a proceeding for the dissolution of a partnership did not have the discretion to set aside his decree made in accordance with a written agreement, signed by both parties and their counsel, directing a receiver to sell the partnership assets. The stipulation and agreement entered into by the parties provided for the conduct of the sale by auction, the assets to be sold at the auction and the terms of payment for purchases. In addition, the agreement authorized the receiver to take all steps to consummate sales by executing all documents necessary to pass title without further judicial intervention. Hence, the appellate court concluded that "the [equity] court was without authority to set aside the sale so agreed to by the interested parties and approved by the court itself." *Id.* at 158, 106 A.2d at 233.

We recognize that "wherever justice requires," *Laughlin v. Berens, supra,* 73 App.D.C. at 139, 118 F.2d at 196, "[a] party may be relieved from a stipulation when so doing does not prejudice the other party and will result in expedition of the proceedings." *Santucci v. Mancuso,* 78 A.2d 671, 673 (D.C.1951). Appellees, however, have failed to demonstrate the applicability of this principle to their case. At the hearing on their exception to the master's final report, appellees asserted that his assessment was incorrect; no evidence was introduced to demonstrate any injustice in the master's assessment which would warrant the court relieving them from their stipulation. Indeed, to the contrary, the master's report itself, as well as his testimony at the hearing, indicate that before assessing this expense, he conscientiously evaluated the facts before him and attempted to allocate fairly the costs according to the respective benefits each party received.

By disregarding the master's recommended allocation, the trial court effectively created "a new and different stipulation with terms more favorable to appellee," *Maiatico v. Novick, supra,* 108 A.2d at 541, to the corresponding detriment of appellant. This the court had no power to do. *Id.* Accordingly, its order must be set aside.

*Reversed and remanded for proceedings consistent with this opinion.*

---

tarily agreed to be bound by the determination of the master in allocating these costs. The reasoning of *D.M.W. Contracting Co.,* therefore, is inapposite to the facts here. As a consequence, similarly inapposite is appellees' assertion of the equitable discretion of the court to allocate costs. *See Ruby Lee Minar,*

*Inc. v. Hammett,* 60 App.D.C. 291, 53 F.2d 149 (1931), *cert. denied,* 284 U.S. 682, 52 S.Ct. 200, 76 L.Ed. 576 (1932).

**6.** *See* note 1 *supra,* and accompanying text.