## Dulles *v.* Dulles, Appellant.

Argued November 23, 1951.  Before DREW, C. J., STERN, STEARNE, LADNER and CHIDSEY, JJ.

*Edwin P. Rome,* with him *Gray, Anderson, Schaffer & Rome,* for appellant.

*Henry A. Craig,* with him *Edward J. Kirchner* and *Kirchner & Strassner,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 7, 1952:

In 1946 plaintiff, Gweneth Betty Dulles, filed a bill in equity against defendant, Leib Harrison Dulles, in which she averred that she, a British subject, and he, a citizen of the United States, but both of them residents of and domiciled in France, were united in marriage in Paris in 1932; that because of their matrimonial residence and domicile in France all the property of which either was possessed was, under French law, community property; that this community of property would be dissolved by divorce or judicial separation and the joint assets would then be divided between them; that some of this property consisted of securities held for defendant by the Fidelity-Philadelphia Trust Company of Philadelphia; that plaintiff and defendant had each filed a petition for divorce in the Civil Tribunal of the First Instance at Grasse, both of which proceedings were then pending; that she feared that defendant, unless restrained, would take possession of the property at the Trust Company and deal with it as his separate property without her consent. She therefore prayed that a decree be entered enjoining the Trust Company from transferring any of the assets of the fund in its possession until both of the divorce proceedings were finally terminated and until a distribution of the community property had been awarded by the French court.

Defendant filed an answer denying that under the facts alleged in the bill plaintiff had any community rights in the property held by the Trust Company. By the time the case came on for hearing the Civil Tribunal of the First Instance at Grasse had granted plaintiff a limited divorce and at the same time had granted defendant an absolute divorce, the latter, of course, making the former unimportant; plaintiff had appealed from the judgment of absolute divorce to the

Court of Appeals in Aix-en-Provence, which appeal was then pending. At the hearing an expert in French law testified that the community system applied to the parties, and that, upon the termination of the divorce proceedings, their property would be divided between them by a notary as directed by the court. The impression was thus given, and counsel for both parties apparently were therefore of the belief, that the property rights of the parties would be determined in and by the divorce proceedings and that no other actions would be necessary, or in order, for that purpose. The result was that, under date of January 3, 1947, counsel agreed to a consent decree terminating the hearing. This decree provided for the issuance of an injunction restraining the Trust Company from transferring to defendant any of the assets it held for him. It further provided as follows: "This injunction shall continue until further order of this Court. Application for such Order may be made only after the plaintiff's action for a separation, and the defendant's action for a divorce . . ., together with all issues raised or to be raised *in said actions* which pertain to property and the property rights of the respective parties shall have been litigated and adjudicated beyond all appeal, review or revision, in France. Such Order of this Court shall either dissolve this Injunction or shall direct the Fidelity-Philadelphia Trust Company to distribute the property . . . in accordance with such determination of the property rights of the respective parties." (Italics supplied.)

In 1949 the present proceedings were instituted by the filing by defendant of a petition to dissolve the injunction of January 3, 1947. At a hearing held thereon it appeared that shortly after the consent decree had been entered the Court of Appeals in Aix-en-Provence had affirmed the judgment of absolute divorce in defendant's favor, that plaintiff had then appealed to

the Court of Cassation, the highest court in France, and that that court also had affirmed the judgment, whereby the divorce proceedings had been finally and irrevocably determined. It further appeared that, contrary to the impression obtained at the original hearing on the bill in equity, the controversy as to the property rights of the parties was not, and under French procedural law could not have been, adjudicated in the divorce proceedings, but that it was necessary for such purpose to resort to a separate action; that plaintiff had instituted such an action in the Civil Tribunal of the First Instance at Grasse, and that that tribunal had entered a judgment holding that the property status of the parties was that of separation of property and not community of property; that plaintiff had appealed this judgment to the Court of Appeals in Aix-en-Provence, which court had affirmed the judgment of the lower court; and that plaintiff had further appealed to the Court of Cassation, where the case was then pending. Defendant accordingly argued that, as the matter then stood, the courts in France had decided that plaintiff had no rights whatever in defendant's property, that plaintiff's appeal to the Court of Cassation did not carry with it any stay or supersedeas, that defendant was therefore entitled to have all his property released to him, and that all his assets in France had been freed of the attachments which plaintiff had levied thereon. Defendant produced testimony to the effect that, according to French procedure, an affirmance by the Court of Cassation of the judgment of the Court of Appeals in Aix-en-Provence would end the matter, but if the Court of Cassation decided otherwise it could not enter a final judgment but had to refer the case back to another Court of Appeals which would hear it all over again and from its decision there would lie a second appeal to the Court of Cassation; that court would then make a

final ruling and remand the case to still another Court of Appeals which now, at that stage of the proceedings, would be bound by the ruling of the Court of Cassation; thus the final determination of the property rights of the parties might be delayed for a long number of years. Defendant therefore contended that this situation was not in the contemplation of the parties when the consent decree was agreed to, it being then thought that all questions as to property rights would be adjudicated in the course of the proceedings in divorce and thereby promptly determined.

The learned court below, without objection by plaintiff, modified the injunction of January 3, 1947, by releasing to defendant the control of one-half of the assets held by the Trust Company less an amount equal to one-half of the income which had accrued on the fund and been paid to defendant from the time of the entry of the consent decree. It refused, however, to free the remaining half of the fund, and defendant now appeals on the ground that the injunction should have been dissolved as to *all* of his property.

In our opinion—notwithstanding the learned argument of defendant's able counsel—the appeal cannot be sustained. Although the consent decree may have been entered into by the parties under a mutual misapprehension of the applicable French laws of procedure, defendant does not ask that it be set aside on that ground; indeed, while a knowledge of those laws might have avoided the error of assuming that the question of property rights would be decided in the divorce proceedings, it is more than likely that the agreement of counsel would nevertheless have provided for the maintenance of the injunction until those rights were finally adjudicated in whatever the appropriate forum. The decree, therefore, stands and remains in full force and effect, and the only question now for decision is that of its proper interpretation,

not whether the French laws, as applied to the present situation, would or would not justify a dissolution of the injunction. In short, the parties are bound by the terms of the agreement into which they entered, a consent decree being merely such an agreement and not a determination by the court of the matters in controversy: *Platt, Executors, v. Wagner,* 347 Pa. 27, 33, 35, 31 A. 2d 499, 502, 503; *Federal Deposit Insurance Corporation v. Board of Finance & Revenue,* 368 Pa. 463, 472, 473, 84 A. 2d 495, 500.

The ambiguity in the decree arises from its provision that the injunction should continue until after the divorce proceedings, "together with all issues raised or to be raised *in said actions* which pertain to property and the property rights of the respective parties shall have been litigated and adjudicated beyond all repeal, review or revision, in France." Admittedly the issues raised which pertain to the property rights of the parties have *not* been litigated and adjudicated beyond all appeal, review or revision, in France, however unfortunate the delay in arriving at a final adjudication of those issues has been and may continue to be. Defendant argues, however, that the *divorce* proceedings have been finally adjudicated, and therefore, even though the property issues were not decided therein, the time has arrived, under the wording of the decree, when application may be made for modifying or dissolving the injunction. But what was obviously the paramount purpose of the parties? Was it to protect plaintiff in her asserted property rights only until the divorce proceedings were ended, even though those rights were then left as undetermined as before, or was it to keep the property under control until such determination was had, it being a matter of no real concern to the parties by what kind of actions or in what particular tribunals the issue would finally be decided? It would seem too clear for discussion that the latter

was their real objective, and therefore the words "in said actions" must give way to the larger purpose which the agreement was plainly intended to subserve. On the other hand, to adopt the construction for which defendant contends would be, in effect, to strike from the decree the words "together with all issues raised or to be raised in said actions which pertain to property and the property rights of the respective parties", so that the provision would merely read: "Application for such Order may be made only after the plaintiff's action for a separation, and the defendant's action for a divorce, shall have been litigated and adjudicated beyond all appeal, review or revision in France." This would truly be to defeat the very purpose of the agreement, which was to keep the property intact until the rights of the parties therein were determined. The construction of an ambiguous agreement must be reasonable and in accord with the evident intention and object of the parties: *Hindman v. Farren*, 353 Pa. 33, 35, 44 A. 2d 241, 242.

Decree affirmed at the cost of appellant.