516 A.2d 412

Curtis Clemmer and June V. Clemmer, his wife, and Dawn Lenore Kratz, Appellants *v.* Lower Frederick Township, Appellee.

Argued June 13, 1986, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Richard E. Wells, Wells, Wells, Loeben, Hoffman & Holloway,* with him, *Mark Ryan,* for appellants.

*James A. Cunningham,* for appellee.

OPINION BY JUDGE MACPHAIL, October 20, 1986:

Curtis Clemmer, June Clemmer (Clemmers) and their daughter, Dawn Lenore Kratz (jointly, Appellants) have brought this timely appeal from a final decree of the Court of Common Pleas of Montgomery County which ordered the demolition of a structure on their property and assessed fines and civil penalties for the violation of local building, subdivision and zoning ordinances. We vacate and remand.

The record reveals that sometime prior to September 10, 1979, the Clemmers began construction of a structure on their property without a building permit. On September 10, 1979, Lower Frederick Township (Township) notified the Clemmers that they were in violation of the local building code. The Clemmers subsequently applied for a building permit for the construction of a one-story structure to be used as a storage facility. As construction progressed, the Township concluded that the building appeared more like a residence than a "storage shell". On February 19, 1980, the Township accordingly informed the Clemmers that if they planned to use the facility for residential purposes they would need to apply for subdivision approval which would most likely necessitate obtaining a variance from the Township's subdivision ordinance. They were further requested to halt construction pending consideration of their subdivision application. Despite this request, the Clemmers failed to apply for subdivision approval and continued building.

On November 4, 1981, the Township filed a complaint in equity with the common pleas court and a motion for preliminary injunction which was granted, following a hearing, on February 2, 1982. The preliminary injunction order enjoined further construction and prohibited use of the building except for storage. At a subsequent hearing on the Township's motion for a permanent injunction, the parties reached an agreement on a consent decree which was approved and entered as a final court order on June 20, 1983.

On March 19, 1984, the Township filed a Petition for Further Interim Relief and Final Decree with the common pleas court wherein it was alleged that the Clemmers had violated the consent decree by continuing to build and by failing to diligently pursue subdivision approval. The Township also requested that the

Clemmers be ordered to cease and desist violating local ordinances. The Clemmers answered by denying any violation of the consent decree or local ordinances. Moreover, in New Matter, the Clemmers alleged that the subject property had been conveyed to their daughter, Dawn Lenore Kratz, on January 9, 1984.

At the April 18, 1984 hearing on the Township's petition, the Clemmers informed the Chancellor that Ms. Kratz had not been joined by the Township as a party defendant even though, as owner of the property, she was an indispensable party under Pa. R.C.P. No. 2227(a). The Chancellor, in response, directed the Township to list Ms. Kratz as an indispensable party. The Township subsequently filed a petition for a rule to show cause why Ms. Kratz should not be joined as an additional party defendant. Following a hearing on the rule, at which Ms. Kratz failed to appear, the petition to join was granted on May 16, 1984.

The Chancellor entered his findings of fact, conclusions of law and decree nisi on August 23, 1984, ordering Appellants, *inter alia,* to remove the structure and pay $36,600 as damages, fines and civil penalties for violation of municipal ordinances. Appellants' denial of post-trial relief was accompanied by the Chancellor's memorandum opinion explaining the basis for his decision.

Judgment was entered for the Township on June 25, 1985. Notice of appeal to this Court was filed on July 2, 1985. Subsequently, Appellants' petition for stay and supersedeas was denied by the common pleas court. Appellants then applied to this Court for a stay and supersedeas pursuant to Pa. R.A.P. 1732 which was granted pursuant to an agreement by the parties.

Appellants have raised three central issues in the instant appeal: (1) whether Ms. Kratz was properly joined as an indispensable party defendant; (2) whether the

Chancellor erroneously varied the terms of the consent decree; and (3) whether the Chancellor erred in assessing fines and penalties.

Turning to the first issue, Appellants argue that despite the court-ordered joinder of Ms. Kratz on May 16, 1984, her joinder was not perfected because the Township failed to either serve her with a complaint or file a praecipe for a writ of summons. We must agree with Appellants' position.

As noted previously, the property in question was conveyed by the Clemmers to their daughter on January 9, 1984, after the consent order had been entered and before the Township filed its Petition for Further Interim Relief. Inasmuch as the litigation affects that property, Ms. Kratz is certainly an indispensable party.[1] *See Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 431 A.2d 953 (1981); *Posel v. Redevelopment Authority, City of Philadelphia*, 72 Pa. Commonwealth Ct. 115, 456 A.2d 243 (1983). Of course, it is fundamental that the failure to join an indispensable party deprives the court of jurisdiction. *Borough of Wilkinsburg v. Horner*, 88 Pa. Commonwealth Ct. 594, 490 A.2d 964 (1985).

The Chancellor ordered that Ms. Kratz be joined as a party defendant pursuant to Pa. R.C.P. No. 2232(c) which provides, in pertinent part, as follows:

> At any stage of an action, the court may order the joinder of any additional person who could have joined or who could have been joined in the action and may stay all proceedings until such person has been joined.

---

[1] Whether the conveyance was a sham transaction aimed at thwarting the Township's litigation, as characterized by the Township, or a bona fide transaction, we do not know because there has never been an evidentiary hearing to determine that matter nor are there any pleadings from which that fact can be ascertained.

We conclude that the procedure employed by the Chancellor was proper in this regard. We also conclude, however, that additional action was needed on the part of the Township in order to perfect the joinder of Ms. Kratz. Specifically, we think that the procedures applicable to the joinder of additional defendants found in Pa. R.C.P. Nos. 425 and 2255 must be followed to effect a proper party joinder under Pa. R.C.P. No. 2232(c).[2] As noted in 7 Goodrich-Amram 2d §2232(c):1 at 562 (1977), "[i]f an 'indispensable party' is a party defendant he should be added to the record and *the action stayed until he is served or appears,* for no judgment would be valid in his absence." (Emphasis added; footnote omitted.) In the instant case, although Ms. Kratz has been added to the record, she has neither been served with a complaint nor appeared as a party defendant. Absent such service, we must conclude that Ms. Kratz was not properly joined in the action and that the Chancellor's decree must be vacated. The matter will be remanded for proper service to be effected under Pa. R.C.P. Nos. 425 and 2255[3] and for Ms. Kratz to present her case if she so desires.[4]

---

[2] We recognize that the compulsory joinder of an indispensable party defendant *by a plaintiff* presents a different situation from the usual "additional defendant" setting where it is the *defendant* who is seeking to join another party defendant. Because the effect of the joinder on the new party to the action is similar, however, we believe the same procedures should be applied.

[3] We note that the proscription in Pa. R.C.P. No. 2253 against filing a complaint to join an additional defendant more than sixty days after service of the initial pleading is inapplicable where, as here, the court has effectively required such filing by virtue of its joinder order. Under such circumstances the court has perforce found good cause for the amended complaint to be served.

[4] The Chancellor offered to continue the April 18, 1984 hearing to provide Ms. Kratz an opportunity to testify. Counsel for the Clemmers declined this offer. Since Ms. Kratz has yet to be properly joined as a party defendant, however, we think she is entitled to another opportunity to appear after she has been properly served.

Since we must vacate the Chancellor's order for lack of jurisdiction over an indispensable party, we would not have to address the remaining issues regarding the Chancellor's decree. In the interest of judicial economy, however, we will note several matters for consideration on remand.

In his memorandum opinion, the Chancellor explained his order to tear down the subject structure as being supported by an "implied term" in the consent decree of June 20, 1983.[5] The Chancellor reasoned that

---

[5] The consent decree provides as follows:

1. Defendants agree to apply for subdivision approval and a variance, if necessary. The Defendants will apply for subdivision approval on or before May 29, 1983.

The Defendants will also apply for a percolation test and if the results from the percolation test are satisfactory to the Defendants, they will then process a three-lot subdivision for two existing dwellings and a third lot to convert the storage building to a residence. If the results of the percolation test are not satisfactory to the Defendants, they will then apply for a two-lot subdivision for the two existing dwellings with the storage building remaining on the same lot with the closest existing dwelling.

2. In the event of denial of any application of Defendants, they shall have the right of appeal as provided by law before such denial shall be final.

3. In the event the storage building is to remain for storage only as becomes required under the provisions above, Defendants shall have only two doors on the outside thereof except existing garage doors and all others including, in any event, the door on the front toward the road shall be permanently closed and covered. All windows except one in front and one on each of three floors on both sides and the back shall be permanently closed and covered on or before June 28, 1983. Interior partitions except bearing walls will be removed.

4. If the three lot subdivision is approved for ultimate use of the storage building as a single family residence, Defendants will obtain new building permit therefor.

the consent decree was entered with the understanding that if its terms were not satisfied, the structure could be ordered demolished. We cannot agree with the Chancellor's interpretation. It is accepted in Pennsylvania law that in the absence of fraud, accident or mistake, a court is without the authority or power to vary or modify the terms of a consent decree no matter how distasteful the decree may turn out to be to the parties. *Dravosburg Housing Association v. Dravosburg Borough,* 71 Pa. Commonwealth Ct. 144, 454 A.2d 1158 (1983). We think that the Chancellor's interpretation of an "implied term" in the consent decree constitutes the type of modification proscribed by the law of this Commonwealth. *See also Commonwealth of Pennsylvania v. Rozman,* 10 Pa. Commonwealth Ct. 133, 309 A.2d 197 (1973).

As recognized by the Chancellor, the proper means to enforce a consent decree is through civil contempt sanctions. *See Commonwealth v. U.S. Steel Corp.,* 15 Pa. Commonwealth Ct. 184, 325 A.2d 324 (1974). The Chancellor reasoned that this avenue was not open to him, however, because Appellants had rendered the decree impossible to perform by their failure to obtain subdivision approval. The Chancellor may be correct, but we note that the Township itself has not argued that the decree cannot be executed. Moreover, the terms of the decree require that Appellants apply for a variance from the subdivision ordinance, if necessary. Although their subdivision application has been rejected and no appeal taken, Appellants have yet to apply for a variance. While a variance application might be rejected too, we think it is premature to conclude that the consent decree cannot be executed. Civil contempt sanc-

---

5. Under any circumstances, the steps and sidewalks presently existing at or about the storage building may remain but all construction or work upon said building must be completed within two (2) years of final subdivision approval.

tions are available to enforce the decree and would appear to be the more appropriate remedy at this stage.

With regard to the Chancellor's imposition of damages, fines and civil penalties totaling $36,600, we would note that insofar as the fines and penalties are for violation of municipal ordinances, they are improper. Again, the existing consent decree acts to prevent imposition of such penalties. The consent decree constitutes the agreement between the Township and Appellants on how to resolve the land use violations described in the Township's original equity complaint. The Township's present allegations regarding municipal ordinance violations have not changed substantially from those contained in its original complaint. Since the consent decree was entered with full knowledge by the parties, it is the consent decree which now must be looked to for enforcement. We note again that the Township has not alleged that the decree is invalid due to fraud, accident or mistake. The Township is, accordingly, entitled to have the decree enforced and no more.

We, accordingly, will vacate the Chancellor's order and remand for disposition consistent with the foregoing opinion.

## ORDER

The order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby vacated and remanded for disposition consistent with the foregoing opinion.

Jurisdiction relinquished.

---

CONCURRING AND DISSENTING OPINION BY JUDGE COLINS:

I dissent from the majority's conclusions concerning the joinder of Dawn Lenore Kratz. In my opinion, Ms. Kratz was properly joined, considering the unique circumstances of this case.

I agree with the majority's conclusions in all other aspects of the opinion.