543 A.2d 502

**LOWER FREDERICK TOWNSHIP, Appellant,**

v.

**Curtis CLEMMER and June V. Clemmer his wife, and Dawn Lenore Kratz, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1988.

Decided May 20, 1988.

Reargument Denied July 8, 1988.

314

James A. Cunningham, Pottstown, for appellant.

Richard E. Wells, Pottstown, for Clemmers.

Mark Ryan, Norristown, for Kratz.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice.

Appellant Lower Frederick Township (Township) appeals from an order of the Commonwealth Court reversing a decree of the Common Pleas Court of Montgomery County that directed appellees, Curtis Clemmer, June V. Clemmer (Clemmers) and Dawn Lenore Kratz to demolish and remove a building on their property, and ordered the Clemmers to pay the sum of $36,000 as damages, fine and civil penalty for violations of municipal ordinances. The Township raises three principal questions: (1) whether the appellee, Dawn Lenore Kratz, was properly joined as an additional defendant and therefore, within the jurisdiction of the court; (2) whether the lower court order directing appellees to demolish the "residential structure" under construction on their property was within the power of the court to order; and (3) whether a court sitting in equity may impose damages, fine and penalty for violations of municipal ordinances. The Commonwealth Court held that Dawn Lenore Kratz was not properly joined; that the lower court did not have the authority to order the residential shell demolished; and that the lower court lacked the authority to impose damages, fine and civil penalty for local ordinance violations. 101 Pa.Cmwlth. 341, 516 A.2d 412. We disagree with the conclusions of the Commonwealth Court; therefore, we reverse.

### Background

In early September of 1979, it came to the attention of the appellant Township that, without first obtaining a building permit, appellee Curtis Clemmer had commenced construction of a building on certain property owned by him and his wife June. The Clemmer property is located on Gravel Pike in Lower Frederick Township in an R–2 zoning district. The R–2 zoning classification permits one principal single

family use and accessory uses. At the time building began, the Clemmers already had their principal family residence on the property. Shortly after learning of the construction activity, the Township notified Mr. Clemmer, in writing, that he was violating the Township building code. He was informed that all construction work must cease forthwith.

On September 24, 1979, the Clemmers applied for and received a building permit. The permit called for construction of a one-story, one room "shell only," to be used as a storage facility.[1] As construction of the "shell only" proceeded, it became apparent from the size and shape of the structure that its final intended use was more likely to be a residential dwelling rather than a storage shed. In a letter dated February 19, 1980, the Township notified the Clemmers that if they intended to use the structure as a residence, it was necessary for them to comply with the applicable subdivision ordinance. The Township requested that all construction stop immediately and that the Clemmers take the steps required to obtain complete subdivision approval. The Clemmers ignored the Township's notice and request, and continued with construction of the building.

Responding to the Clemmers' apparent disdain for the law, the appellant Township, on November 4, 1981, filed a complaint in equity and a motion for a preliminary injunction against appellees, Curtis and June Clemmer. In its lawsuit, the Township sought the following relief: (a) that the Clemmers be ordered to cease and desist from violating the Township ordinances; (b) that the Clemmers be ordered to remove, alter or take down the building under construction; (c) that the Township be awarded just and proper damages; and (d) that the Township be granted such other and further relief as is deemed just and reasonable.[2] On

1. On September 21, 1979, Curtis Clemmer submitted a letter to Lower Frederick Township, to the attention of Julius J. Lilitti, Building Inspector, as follows:

"This letter is to confirm the intended use of building to be constructed as per plans submitted for storage purposes only. I also agree to comply with regulations, should the building be converted to be used for residential purposes at a later date."

2. See prayer for relief in the Township's complaint in equity.

318

January 28, 1982, the court conducted a hearing on the Township's request for a preliminary injunction. The court granted the preliminary injunction sought, and entered the following order:

ORDER

AND NOW, this 2nd day of February, 1982, following the hearing held in open court on January 28, 1982, Plaintiff Lower Frederick Township's Motion for Preliminary Injunction is GRANTED and it is ORDERED AND DECREED that Defendants Curtis H. Clemmer and June V. Clemmer shall be and are hereby enjoined from further construction, building or work whatsoever on the structure which is the subject of the within action and shall make no use or occupancy thereof except as a shell for storage until further ORDER of this COURT.

This action may be listed for further hearing and for hearing on permanent injunction at the request of either party. THIS COURT will retain jurisdiction for the enforcement or modification of this ORDER.

On March 7, 1983, the Township filed a motion for a hearing on its request for a permanent injunction and its demand for other relief. A hearing was set for April 27, 1983. At the time of the scheduled hearing, the parties conferred and negotiated an agreement. On April 29, 1983, the terms of that agreement were placed on the record. Eventually, those terms were incorporated into a consent decree and order of court dated June 20, 1983. The consent decree and order provided as follows:

DECREE AND ORDER

AND NOW, this 20th day of June, 1983 following presentation in open Court on April 29, 1983 and the filing of a transcription of the agreement of the parties on or about May 24, 1983, the agreement is approved and the Order of Court is made permanent, as follows:

1. Defendants agree to apply for subdivision approval and a variance, if necessary. The Defendants will apply for subdivision approval on or before May 29, 1983.

The Defendants will also apply for a percolation test and if the results from the percolation test are satisfactory to the Defendants, they will then process a three-lot subdivision for two existing dwellings and a third lot to convert the storage building to a residence. If the results of the percolation test are not satisfactory to the Defendants, they will then apply for a two-lot subdivision for the two existing dwellings with the storage building remaining on the same lot with the closest existing dwelling.

2. In the event of denial of any application of Defendants, they shall have the right of appeal as provided by law before such denial shall be final.

3. In the event the storage building is to remain for storage only as becomes required under the provisions above, Defendants shall have only two doors on the outside thereof except existing garage doors and all others including, in any event, the door on the front toward the road shall be permanently closed and covered. All windows except one in front and one on each of three floors on both sides and the back shall be permanently closed and covered on or before June 28, 1983. Interior partitions except bearing walls will be removed.

4. If the three lot subdivision is approved for ultimate use of the storage building as a single family residence, Defendants will obtain new building permit therefor.

5. Under any circumstances, the steps and sidewalks presently existing at or about the storage building may remain but all construction or work upon said building must be completed within two (2) years of final subdivision approval.

On March 19, 1984, the Township filed a petition for further interim relief and a final decree. In that petition the Township averred that the Clemmers violated and continued to violate the ordinances, rules and regulations of

Lower Frederick Township and prior orders of court, including the consent decree and order of June 20, 1983. The Township alleged that the violations involved: (a) the Clemmers building a dormer window or windows on the subject building; (b) the failure to complete, in good faith, an application for sub-division approval and a variance, if necessary; (c) the failure to limit the number of doors and windows as ordered and the failure to permanently close and cover the existing doors and windows as required; (d) the failure to take action necessary to bring their property in compliance with subdivision and zoning ordinances and regulations as required by law; and (e) the failure to act in accordance with other Township ordinances, rules and regulations and the requirements of orders of the court. The Township asked the court, inter alia, to enforce its prior orders and to order the removal, alteration or demolition of the building under construction or any part thereof found to be in violation.[3]

The Clemmers filed an answer to the petition in which they denied any violations of the ordinances and regulations of Lower Frederick Township or of prior orders of court. Additionally, the Clemmers, in new matter, averred that on January 9, 1984, they had transferred the subject premises to their daughter, Dawn Lenore Kratz.

On April 18, 1984, a hearing was held on the Township's petition. In that hearing the court found that Curtis Clemmer was in violation of the Court's previous orders. However, since Dawn Lenore Kratz had not been joined as a party to the action, the court delayed adjudication until Ms. Kratz had been given an opportunity to be heard. The court directed that Dawn Lenore Kratz be joined as an indispensable party.

Pursuant to the court's direction, the Township brought a petition to join Dawn Lenore Kratz as an additional party. A rule was issued upon Ms. Kratz and the Clemmers to show cause why the Township's petition should not be

3. See the Township's petition for further interim relief and final order.

granted. A copy of the petition and rule along with copies of all pleadings filed in this action were served on appellee, Dawn Lenore Kratz. A hearing was scheduled for May 16, 1984. Although Ms. Kratz had been served with a copy of the petition and received notice of the hearing, she did not appear. By order dated May 16, 1984, Dawn Lenore Kratz was joined as an additional defendant. With Ms. Kratz joined as a party, the court went on to make findings of fact and conclusions of law. Consistent with its findings and conclusions, the court entered a decree nisi as follows:

## DECREE NISI

AND NOW, this 23rd day of August, 1984, in consideration of the foregoing, the Court hereby enters the following Order:

(a) Defendants, joint and severally and/or Additional Defendant are ordered and directed to demolish, tear down, remove and haul away all debris of the building known as and referred to as the so called "shell for storage" upon the property at Gravel Pike, Lower Frederick Township, Montgomery County, Pennsylvania, and all parts thereof, including basement or foundation thereof, and shall thereafter grade and restore the surface of the land at their own cost and expense within thirty (30) days.

(b) Defendants shall pay to Plaintiff as damages, fine and civil penalty for violation of Ordinances the sum of $100 per day since May 29, 1983 until June 1, 1984, or a total of Thirty–Six Thousand, Six Hundred Dollars ($36,600.). Judgment for this sum shall be entered for plaintiff against defendants, jointly and severally, upon praecipe of Plaintiff if not paid within thirty (30) days of this date.

(c) Upon failure of Defendants, either or both of them and/or Additional Defendant to comply with this Decree and Order, Plaintiff may forthwith enter upon the property and do all demolition, grading and restoration necessary. The costs thereof shall be assessable

against Defendants jointly and severally, and/or Additional Defendant who shall also be assessed a fine and civil penalty of $100.00 per day for each and every day the failure continues. The fine and penalty shall be payable to the Prothonotary of Montgomery County, Pennsylvania and for the use of said County.

(d) This Court will retain jurisdiction hereof for the purpose of enforcement of this Decree and Order.

On June 4, 1985, appellees' post trial motions were denied. On June 25, 1985, a praecipe to enter the decree nisi as the final order of the court was filed. On appeal from that final order, the Commonwealth Court vacated the lower court's decree and remanded for further disposition. We granted the Township's petition for allowance of appeal.

■ At the outset, we recognize that "normally, appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion." *Sack v. Feinman,* 489 Pa. 152, 165–66, 413 A.2d 1059, 1066 (1980) citing *Commonwealth Department of Environmental Resources v. Pennsylvania Power Co.,* 461 Pa. 675, 337 A.2d 823 (1975). "The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Sack v. Feinman, supra,* citing *Delp v. Borough of Harrisville,* 25 Pa.Cmwlth. 486, 360 A.2d 758 (1976). With these principles in mind, we examine the issues raised.

I.

At the start of the hearing on April 18, 1984, on the Township's petition for further interim relief and a final decree, counsel for the Clemmers preliminarily raised the point that the Clemmers had recently transferred the subject property to their daughter, Dawn Lenore Kratz. Counsel for the Clemmers argued that since Dawn Lenore Kratz was now the owner of the property in question, she was an indispensable party, and the Township had failed to join her as mandated by the Pennsylvania Rules of Civil Procedure.

The chancellor deferred ruling on the point raised by Clemmers' counsel and went on to receive evidence from both sides. At the conclusion of the, hearing, the chancellor directed the Township's counsel to name Dawn Lenore Kratz as an indispensable party.

(c) At any stage of an action, the court may order the joinder of any additional person who could have joined or who could have been joined in the action and may stay all proceedings until such person has been joined. The court in its discretion may proceed in the action although such person has not been made a party if jurisdiction over him cannot be obtained and he is not an indispensable party to the action.

Pennsylvania Rules of Civil Procedure, Rule 2232(c).

The appellees argue that despite the chancellor's order directing that Dawn Lenore Kratz be joined as an indispensable party to the lawsuit, the joinder was never accomplished and the court never obtained jurisdiction over her. The Clemmers contend that Pa.R.C.P. Rule 2252(a), which provides that the joining of an additional defendant is commenced by the filing of a praecipe for a writ or by a complaint, governs the addition of Ms. Kratz as a party in this case. Pa.R.C.P. Rule 2252(a) provides:

**Rule 2252. Right to join Additional Defendants**

(a) In any action the defendant or any additional defendant may, as the joining party, join as an additional defendant any person whether or not a party to the action who may be alone liable or liable over to him on the cause of action declared upon by the plaintiff or jointly or severally liable thereon with him, or who may be liable to the joining party on any cause of action which he may have against the joined party arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based.

The appellees argue that the Township failed to file either a praecipe for a writ or a complaint; therefore, Dawn Lenore Kratz was not properly joined as a party defendant and the trial court lacked jurisdiction over her.

The Commonwealth Court agreed with the appellees' argument stating that additional action on the part of the Township was necessary to perfect the joinder of Ms. Kratz. The Commonwealth Court stated:

Specifically, we think that the procedures applicable to the joinder of additional defendants found in Pa.R.C.P. Nos. 425 and 2255 must be followed to effect a proper party joinder under Pa.R.C.P. No. 2232(c). As noted in 7 Goodrich Amram 2nd § 2232(c):1 at 562 (1977), "[i]f an 'indispensable party' is a party defendant he should be added to the record and *the action stayed until he is served or appears,* for no judgment would be valid in his absence." (Emphasis added; footnote omitted.) [4]

*Clemmer v. Lower Frederick Township,* 101 Pa.Cmwlth. 341, 346, 516 A.2d 412, 415 (1986). The Commonwealth Court went on to say that although Ms. Kratz was added to the record, she was neither served with a complaint, nor did she make an appearance. *Id.* That court concluded that Ms. Kratz was not properly joined. We disagree.

■ The rules relied upon by the Commonwealth Court are the rules for the "Joinder of Additional Defendants" found in Pa.R.C.P. Rules Nos. 2251 to 2274. These rules, however, do not speak to the situation of the instant case where a plaintiff is ordered to add another person as a party defendant because that other person is an indispensable party. A reading of Rules 2251 to 2274 reveals that they are intended to apply to defendants who wish to join an additional defendant. To illustrate this intent, we quote from Rules 2252, 2253, 2254, 2255 and 2256.

Rule 2252 sets forth who may join an additional defendant in a lawsuit. Rule 2252(a) begins: "In any action *the defendant or any additional defendant* may, as the joining party, join as an additional defendant any person...." (Emphasis supplied.)

4. The Commonwealth Court's citation to Pa.R.C.P. No. 425 is clearly erroneous in that Rule 425 was not in effect in May, 1984. Rule 425 was adopted June 20, 1985 and became effective January 11, 1986.

Rule 2253 sets forth the time to file a praceipe for a writ or a complaint. Rule 2253 provides: "Neither praecipe ... nor a complaint ... shall be *filed by the original defendant or an additional defendant* later than sixty (60) days...." (Emphasis supplied.)

Rule 2254 provides for the service of process in joining an additional defendant. Rule 2254(a) begins: "If the venue of the action by the plaintiff against the defendant is properly laid, *the defendant or any additional defendant may serve an additional defendant* in any other county...." (Emphasis supplied.)

Rule 2255 sets forth the procedure in joining an additional defendant. Rule 2255(a) merely states that the procedure between the joining party and the additional defendant "shall be the same as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant."

Rule 2256 addresses the question of counterclaims. Rule 2256(c) provides: "A party against whom a counterclaim is asserted shall have the same right to join any one as an additional party *that is given to a defendant in Rule 2252.*" (Emphasis supplied.)

Rules 2251–2257, by their very terms, are designed to apply to the situation where a defendant has grounds to add an additional defendant, or where one added as an additional defendant wants to add another additional defendant. The only time the rules are applicable to a plaintiff is where a plaintiff is counter-sued on a counterclaim and that plaintiff, who becomes a counterclaim defendant, wishes to join another as an additional defendant in the counterclaim.

■ The appellant Township, at the direction of the chancellor, filed a "Petition to Join Dawn Lenore Kratz as an Additional Party and Subject Her to the Jurisdiction of the Court." In its petition, the Township averred: (1) that this case involved an action by Lower Frederick Township against the Clemmers to force compliance with the Township sub-division and land development, zoning, and building

ordinances, and compliance with previous orders of court; (2) that the action involved violations of the said municipal ordinances and prior orders occurring on property of the Clemmers at Gravel Pike, Zieglerville, Pennsylvania, which property was recently transferred to Dawn Lenore Kratz; (3) that the transfer of the subject real estate was not a bona fide and valid transfer; and (4) that if the transfer was valid, Ms. Kratz was the transferee of property upon which there were violations of the ordinances, rules and regulations of the Township and or prior orders of court. Attached to and made a part of the petition were copies of all prior pleadings in the action. The Township requested that the court issue a rule and hearing thereon upon the Clemmers and Dawn Lenore Kratz to show cause, if any there be, why Ms. Kratz should not be joined as an additional party; why she should not be subject to the jurisdiction of the court; and why the court should not grant such relief as may be necessary, just and reasonable.[5]

The lower court issued a rule and set a hearing on that rule for May 16, 1984. The record shows that Ms. Kratz was properly served at her home with a copy of the petition and rule. Ms. Kratz did not appear for the hearing on May 16, 1984, and on May 17, 1984 the court entered an order adding her as an additional party defendant.

In this case the chancellor acted pursuant to Rule 2232(c) and ordered the joinder of Dawn Lenore Kratz as an indispensable party. The Rules of Procedure do not contain specific provisions outlining a procedure where a plaintiff is required to add another person as a party defendant. In the absence of a mandated procedure, trial courts have adopted various methods to effect a proper joinder of an additional party under circumstances other than the traditional situation of a defendant adding an additional defendant which is covered by Rules 2251, et seq. See 7 Goodrich Amram § 2232(c):1.1, pp. 563–64. Among the methods approved by the lower courts is the kind of procedure adopted

---

**5.** See Township's Petition to Join Dawn Lenore Kratz as an Additional Party and Subject Her to the Jurisdiction of the Court.

by the Township and approved by the chancellor in this case, namely, adding an additional party by petition and rule. 7 Goodrich Amram § 2232(c):1.1, supra.[6]

There were no substantive allegations of fact to make specifically against Ms. Kratz other than that she had become the record owner of the subject property. All of the crucial averments of violations against the Clemmers and affecting the property in question were contained in the original pleadings in the case. These original pleadings were attached to and made a part of the petition that was served on Ms. Kratz.

The purpose of process is to give a court jurisdiction over the person of the defendant and to give the defendant adequate notice of the action against him. We believe the procedure approved by the chancellor in this case accomplished both purposes. In *Spica v. International Ladies Garment Workers' Union*, 388 Pa. 382, 130 A.2d 468 (1957), citing *Simon v. Craft*, 182 U.S. 427, 436, 21 S.Ct. 836, 839, 45 L.Ed. 1165 (1901), we said: "A state cannot exercise through its courts judicial jurisdiction over a person, although he is subject to the jurisdiction of the state, unless a method of notification is employed which is reasonably calculated to give him knowledge of the attempted exercise of jurisdiction and an opportunity to be heard." 388 Pa. at 394, 130 A.2d 468. In considering the propriety of a procedure, we must look at substance rather than mere form. The procedure used in this case, namely petition and rule personally served on the additional party Dawn Lenore Kratz, is different in form from the procedure required when a defendant is joining an additional defendant. This difference, however, is not critical. It does not render the procedure used here deficient. The method of notification ordered by the chancellor and employed by the Township was reasonably calculated to give Ms. Kratz notice and knowledge of the attempted exercise of jurisdiction over her

6. *See U.S. Steel Corporation v. Mursor Builders, Inc.,* 61 Pa.D. & C.2d 454 (1972); *Bergman v. Sentry Paint and Chemical Co.,* 42 Pa.D. & C.2d 159 (1965); and *Frushon v. School District of Pittston Twp.,* 8 Pa.D. & C.2d 165, 46 L. 2 Leg.Reg.Rep. 63 (1956).

and afforded her an opportunity to be heard. Under the circumstances of this case, the joinder was properly effected.

## II.

The Township next argues that the chancellor's order in directing that the "shell for storage" upon the Clemmers' property be demolished was a proper order in that demolition was an implied term of the consent decree. The Township argues in the alternative that if it was not an implied term, demolition was, nonetheless, a fair form of relief because the Clemmers rendered the consent decree impossible to perform.

In ordering the destruction of the structure, the chancellor found that removal was an implied term of the consent decree and order. The Clemmers were obliged to comply with all of the requirements of that decree or suffer the consequence of destruction of the building. The chancellor thus concluded that the order of demolition did not alter the consent decree, but rather gave effect to it.

The Commonwealth Court rejected the chancellor's construction of the agreement between the parties. The Commonwealth Court concluded that the chancellor's interpretation of the consent decree as containing an implied term of demolition actually was a modification of that decree contrary to the law of Pennsylvania. We disagree with the Commonwealth Court and find that the analysis of the chancellor is the correct disposition of the issue.

To begin, we note that:

A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties thereto to the terms thereof: *Dulles v. Dulles*, 369 Pa. 101, 107, 85 A.2d 134. As a contract, the court, in the absence of fraud, accident or mistake, had neither the power nor the authority to modify or vary the terms set forth. . . .

*Universal Builders Supply, Inc. v. Shaler Highlands Corp.*, 405 Pa. 259, 265, 175 A.2d 58, 61 (1961). Thus, the question presented is whether the order directing demolition of the structure modifies or varies the terms of the consent decree of June 20, 1983.

■■■ The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *R.F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973); *Z & L Lumber of Atlasburg v. Nordquist*, 348 Pa.Super 580, 502 A.2d 697 (1985). "Since a judgment by consent is regarded as a contract between the parties, it must be construed the same as any other contract." 49 C.J.S. Judgments, § 178. In ascertaining the intent of the parties, it is proper to consider the surrounding circumstances of the transaction. *Kennedy v. Erkman*, 389 Pa. 651, 133 A.2d 550 (1957). It is also proper to consider the purpose of the agreement in construing a contract. *Pittsburgh Steel Company v. Patterson–Emerson–Comstock, Inc.*, 404 Pa. 53, 171 A.2d 185 (1961).

In order to determine the meaning of the agreement, we must examine the entire contract since it is well settled that in construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter. *Mather Estate*, 410 Pa. 361, 366–67, 189 A.2d 586, 589 (1963).

■■■ In the present case, the chancellor found that the pertinent facts and surrounding circumstances at the time of the consent decree were the following: (1) the Clemmers were in violation of the Township's ordinances, rules and regulations; (2) the Clemmers were in violation of the building permit that had been issued to them; (3) the Township was seeking the destruction of the structure because of the continuing violations; (4) the trial court could have granted the relief requested and directed demoli-

tion of the building; and (5) the demolition of the structure was not ordered because of the agreement placed on the record wherein the Clemmers were to correct all violations and bring their property into compliance with existing laws.

The consent decree in question was the direct result of the Township's motion for a hearing on a permanent injunction wherein the Township sought, inter alia, destruction of the structure. To avoid an immediate order of demolition, the Clemmers agreed to the requirements of the consent decree. At the time the Township brought the motion, the Clemmers were already legally bound to comply with all of the lawful municipal laws, ordinances, rules and regulations. Further, at that time, the Township sought to have the court order the destruction of the building because of the Clemmers' failure to comply with those laws and ordinances. It would be of no benefit to the Township to agree to a consent decree which required the Clemmers to comply with all municipal laws and ordinances, and in so agreeing, relinquish the Township's right to seek demolition of the building if the Clemmers reneged. The chancellor found that the implication was clear that the Township wanted to have the structure demolished unless the Clemmers complied, in all respects, with all applicable ordinances and laws. We agree.

We find it difficult to accept that the Clemmers reasonably intended and believed that by merely agreeing to comply with the laws and ordinances—something they were already obligated to do—they could continue in their defiant actions without fear that the Township could re-seek an order of demolition.

In order to enforce a consent decree, a court has the power to construe it. 30A C.J.S. Equity § 681. A reasonable construction of the consent decree entered in this case is that the Clemmers were to meet all of the requirements set forth therein and, if not, suffer the consequence originally sought by the Township—destruction of the structure. It is unreasonable to assume that the parties intended that the illegal building was to remain intact and standing re-

gardless of whether or not the Clemmers complied with the relevant municipal ordinances upon receiving another chance to do so.

We conclude that the chancellor's order directing destruction of the illegal Clemmer structure did not vary or modify the terms of the consent decree of June 20, 1983. On the contrary, the order to demolish the structure gave effect to the intentions of the parties and enforced the order as contemplated by the agreement. We reject the position of the Clemmers that they can enter into a consent decree to avoid an order of demolition of their building and then ignore the terms of that decree without fear of anything more than another order directing them to obey the law.[7]

## III.

Finally, the Township argues that a court of equity may impose a fine and civil penalty for violations of municipal ordinances as the chancellor did in this case. The decree of August 23, 1984 directs, inter alia, that:

> (b) Defendants shall pay to Plaintiff as damages, fine and civil penalty for violation of Ordinances the sum of $100 per day since May 29, 1983 until June 1, 1984, or a total of $36,600.00. Judgment for this sum shall be entered for plaintiff against defendants, jointly and severally, upon praecipe of Plaintiff if not paid within thirty (30) days of this date.

The Commonwealth Court held that the imposition of damages, fine and civil penalty for violations of municipal ordinances was improper. It was concluded that the consent decree prevented such fine and penalty from being imposed. The Commonwealth Court said:

> The consent decree constitutes the agreement between the Township and [the Clemmers] on how to resolve the land use violations described in the Township's original

7. Because we have found that the Township's right to re-seek an order of demolition was an implied term of the consent decree, we do not reach the Township's alternative position that the Clemmers rendered the consent decree impossible to perform.

equity complaint.... Since the consent decree was entered with full knowledge by the parties, it is the consent decree which now must be looked to for enforcement. *Clemmer v. Lower Frederick Township, supra,* 101 Pa. Cmwlth. at 349, 516 A.2d at 416.

 The appellant Township argues that a court sitting in equity has broad discretion in shaping its decree and granting relief tailored to the particular circumstances of the case.

"Under the prayer for general relief, a decree which accords with the equities of the cause may be shaped and rendered; the court may grant any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer.... Under the prayer for general relief, the plaintiffs are entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for."

*Meth v. Meth,* 360 Pa. 623, 625–26, 62 A.2d 848, 849 (1949). (Citations omitted.) A prayer for general relief is as broad as the equitable powers of the court. 30A C.J.S., Equity § 607(b). Under such a prayer a chancellor in equity may grant any relief that is consistent with the theory and purpose of the action. *Id.* In its motion the Township included a prayer for general relief as follows:

7. By reason of all the above, Plaintiff is entitled to the following relief:

D. An award of such damages to Plaintiff as the Court deems just and proper under the circumstances, including costs of these proceedings and attorney's fee; and

E. The grant to Plaintiff of such other and further relief as may be necessary, just, reasonable and proper.

The Commonwealth Court in ruling that the fine and penalty imposed was improper cited the existence of the consent decree and its terms which did not specifically provide for such sanctions. As we observed, the Commonwealth Court said that the consent decree constituted a

resolution of the violations described in the Township's original complaint. The resolution called for by the terms of the consent decree was that the Clemmers were to commence necessary action to end the described violations by May 29, 1983. The evidence produced at the hearing on the Township's petition showed that the Clemmers did not in good faith abide by that requirement and continued in violation after that date. The consent decree, by its terms, only resolved any violations up to May 29, 1983. Violations that existed after that date were not covered by the decree and could be dealt with in a reasonable manner by the chancellor. Where damages are claimed in an equity action and the evidence shows that such facts exist, it is proper for the court to order such relief. *Meth v. Meth, supra.*

A review of the record in this case shows that the chancellor did not commit an error of law or abuse his discretion: (1) in ordering Dawn Lenore Kratz added as an indispensable party; (2) in ordering the demolition of the structure under construction on the Clemmer/Kratz property; and (3) in imposing damages, fine and civil penalty on the Clemmers for violations of municipal ordinances. Accordingly, the order of the Commonwealth Court is reversed and the order of the Court of Common Pleas of Montgomery County is reinstated.

STOUT, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., concurred in the result.

FLAHERTY, J., filed a dissenting opinion in which NIX, J., joined.

FLAHERTY, Justice, dissenting.

I respectfully dissent. I would hold that the joinder of Ms. Kratz as additional defendant was accomplished improperly, and would therefore affirm the order of the Commonwealth Court insofar as it remanded to effectuate proper service.

I agree with the majority's holding that Pennsylvania Rules of Civil Procedure 2251 through 2274, Joinder of Additional Defendants, do not define the procedure governing the joinder of Ms. Kratz. Rules 2251 et seq. apply only when a *defendant* seeks to join an additional defendant, not when a *plaintiff* seeks the joinder, as in this case. Rule 2232(c) empowers a court to join an additional party under circumstances such as were presented in this case, but the rules do not outline the specific steps which must be followed when a plaintiff is required to add another person as a party defendant.

Inasmuch as a detailed procedure is not specified for joinder under these circumstances, it seems appropriate to examine all the rules which govern service of process upon defendants. Although Rule 425 did not exist at the time of the trial court proceedings, the explanatory comment which precedes the rule explains clearly that Subpart C (Rules 420–425) *consolidates* rules governing service of process upon special parties rather than setting forth new criteria. Rule 425(a) states: "Original process shall be served upon an additional defendant who is not already a party to the action in the same manner as if he were an original defendant. Copies of all pleadings filed in the action shall be *served with the complaint against the additional defendant.*" (Emphasis added.) The obvious inference is that any person joined as a defendant is always entitled to a complaint which sets forth a cause of action against him.

The awesome power of a chancellor in equity justifies the detailed requirements set forth in the rules of civil procedure which precede and validate the exercise of jurisdiction over a party and his property. They insure that a person who is to be subjected to the court's pervasive authority will first be presented with a complaint which alleges his wrongdoing and delineates his potential liability. He will not be ordered to tear down his house, bulldoze the foundation, and pay a penalty of $100 per day, without being served with a pleading which explains, in simple terms, why he should be subjected to such draconian measures. The ma-

jority upholds these sanctions against Ms. Kratz without according her the right to receive a complaint.

The majority purports to justify this result by quoting the United States Supreme Court as set forth in our opinion in *Spica v. ILGWA,* 388 Pa. 382, 394, 130 A.2d 468, 473–74 (1957): "A state cannot exercise through its courts judicial jurisdiction over a person, although he is subject to the jurisdiction of the state, unless a method of notification is employed which is reasonably calculated to give him knowledge of the attempted exercise of jurisdiction and an opportunity to be heard." This statement is not controlling in this case. It is a declaration of the minimal requirements under the due process clause of the federal Constitution— not a statement of what is required under the Pennsylvania Rules of Civil Procedure. In addition, the quotation was not followed in *Spica* itself, and cannot be taken literally in any event.

Were we to take the statement literally, the only necessity would be a method of notification reasonably calculated to inform a defendant of the proceeding and give him an opportunity to be heard; we might well dispense with all the procedural rules relating to service of process. If a petition and rule satisfies the requirement in the case of Ms. Kratz, perhaps a letter will be sufficient in the next instance. We might later conclude that only a telephone call is necessary. So long as we need only a method of notification reasonably calculated to inform a defendant of the proceeding and give him an opportunity to be heard, we would never need such a formality as a complaint.

My position does not exalt form over substance. The purpose of a complaint is explained in Standard Pennsylvania Practice:

### § 21:4. Function of complaint

The primary function of a complaint is to set forth the plaintiff's cause of action. It also should inform the defendant, with reasonable accuracy, of the nature and extent of the plaintiff's claim, and set forth concisely the material and issuable facts on which the plaintiff relies

for his claim. Since the very purpose of the complaint is to set forth facts which show a claim "enforceable" by action, it necessarily fails of this purpose unless those facts are averred.

4 Standard Pa. Practice 2d § 21:4 (1982) (footnotes omitted). These functions of a complaint were never fulfilled in this case insofar as Ms. Kratz is concerned. No cause of action was stated against her. There was no concise declaration of the material and issuable facts upon which the plaintiff relied against Ms. Kratz. Clearly, the plaintiff failed to establish an enforceable claim against this defendant by omitting to file a complaint against her.

Instead, Ms. Kratz was served with a petition alleging that she should be joined in a lawsuit pending against the Clemmers. She did not answer or oppose the petition, believing it was proper to add her as a party to that litigation. She assumed, however, that she was entitled to and would subsequently receive a complaint alleging a cause of action against her. Upon receipt of such a complaint, she would make her answer or interpose her defense, whereupon the issues would be joined and the matter would ripen for adjudication. In blatant disregard of the invariable pleading practice in Pennsylvania, a decision on the merits was prematurely issued against her without according her the mere right to answer a complaint.

It might appear, as a practical matter, that Ms. Kratz had sufficient extra-judicial opportunity to inform herself of all aspects of the lawsuit against the Clemmers, her parents, and to deduce the basis of her own potential liability. Nevertheless, I regard it as improper to abandon the salutary and hitherto invariable requirement that personal jurisdiction cannot be established over a defendant without affording him the opportunity to answer a complaint against him.

I believe the majority has abandoned the fundamental requirement of a complaint without sufficient justification, and I fear the precedent so established. I would affirm the

order of the Commonwealth Court due to the improper joinder of Ms. Kratz.

NIX, C.J., joins this dissenting opinion.