# Butler Area School District v. Einstein Academy

C.P. of Butler County, no. 2001-50031.

*Michael I. Levin,* for plaintiffs.
*Michael N. Onufrak, Paul A. Mooney* and *Alexander H. Lindsay,* for defendant.
*Thomas W. King III,* for intervenors.

SHAFFER, *J.,* September 10, 2001—

## PROCEDURAL HISTORY

The present action was commenced by the Butler Area School District (BASD) on July 24, 2001 when a complaint in equity was filed to prevent defendant Einstein from operating a "cyber" charter school.

On August 9, 2001 a petition for special relief was filed and presented in motion court. Einstein appeared through local counsel. On that date, a preliminary injunction was granted which enjoined Einstein from soliciting or enrolling students who would otherwise attend BASD, and further enjoined Einstein from attempting to collect bills for instruction sent to BASD in early July 2001 and continuing. A hearing on the injunction was scheduled for August 15, 2001. At the request of new counsel for Einstein, a hearing on the injunction was

continued to September 7, 2001. On August 24, 2001, the Karns City Area, Mars Area and South Butler School Districts of Butler County filed petitions to intervene in this legal action and the petition for special relief. A hearing and argument on the issue of intervention was scheduled with the injunction hearing of September 7, 2001. A hearing on the injunction was held September 7, 2001 and September 8, 2001.

## BACKGROUND FACTS

Einstein holds a charter pursuant to the Charter School Law, 24 P.S. §16-1701 et seq. as a result of an agreement and charter dated March 20, 2001 between the Morrisville Borough School District and The E-Academy Charter School (TEACH). Einstein's founders are Mimi Rothchild and her husband, Howard Mandel. Einstein purports to be a fictitious name for a corporation named The National Organization for Children Inc., which prior to June of 2000 was called The Andrew Foundation Inc. In documents filed with the Internal Revenue Service, Miriam Mandel a/k/a Mimi Rothchild has been identified as the CEO of the National Organization for Children Inc.

In November of 2000, TEACH, The E-Academy Charter School, filed an application with the Morrisville School District to become a chartered "cyber school" delivering schooling through the Internet. It is undisputed that a hearing was not held on the application within the time frame contemplated by 24 P.S. §17-1717-A. It is also noted that the fictitious name for Einstein, filed March 30, 2001, did not exist at the time of the application for charter status. The application does not reveal

that the non-profit entity required by the Charter School Law is actually the National Organization for Children Inc.

On January 17, 2001, at a special meeting of the board of the Morrisville School District, Ms. Rothchild presented her application. William Thompson, solicitor for the district testified that his recollection of that meeting led him to believe that Einstein had very little chance of being granted a charter.

No decision on the application was made and a second board meeting was scheduled for March 20, 2001. In the interim, the superintendent of Morrisville, Dr. John Gould, communicated on several occasions with Ms. Rothchild to refine her application to insure approval. Test demonstrations of Einstein's software were arranged for the benefit of the Morrisville School Board members. These demonstrations were not done at public meetings.

Prior to the March 20, 2001 public meeting, Dr. Gould, without board authorization, entered into negotiations with representatives from Einstein to draft a charter school agreement. Testimony established that the negotiations were only completed and the agreement finally drafted one hour before the meeting of March 20, 2001. Thus, no members of the board of directors could have reviewed the agreement prior to the meeting of March 20, 2001. The document executed on March 20, 2001 is styled "charter school agreement" rather than simply "charter." That is presumably because, in addition to the requirements for term and form of charter enumerated in 24 P.S. §17-1720-A, the document also contains an agreement that Einstein will pay Morrisville, in return for "ser-

vices," $200 for each student enrolled at Einstein. Using Einstein's figures for enrollment, Morrisville stands to receive $600,000 for the school year 2001-2002 from Einstein. Additionally, in the charter agreement, Einstein has agreed to lease space and custodial services from Morrisville for $35,000 per year. To guarantee this cash stream, Einstein agreed not to seek a charter from any other school district.

Following the grant of the charter on March 20, 2001, defendant finally registered its fictitious name with the Department of State (March 30, 2001). The actual fictitious name registered to the organization which was granted the charter is "TEACH (The E-Academy Charter School)." [1] As previously stated, TEACH is the fictitious name for the National Organization for Children Inc. Again, this fact was not disclosed in the charter school agreement. Further, the "Einstein Academy Charter School" is not a registered fictitious name for any existing entity, nor is it a registered non-profit organization with the Department of State. As Einstein existed at this time period only as an idea of Howard Mandel and Mimi Rothchild, Einstein's address is noted on the Department of State Records as the Mandel residence.

Einstein is to be run by a corporation called Tutorbots Inc. incorporated in June of 2001, as a for profit corporation and having an address at Mailbox's, Etc., a maildrop in Jenkinstown, PA. According to the Department of State Records, Mimi Rothchild is the CEO, secretary and treasurer of Tutorbots. On August 24, 2001

---

1. "TEACH" is also the fictitious name for an entirely different entity registered in 1987, Thee Ecumenical Accreditation Christian Habitat.

Einstein and Tutorbots entered into a management contract for Tutorbots Inc. to operate the charter school. Rothchild is the sole owner of Tutorbots and her husband, Howard Mandel is the executive director.

Einstein, as fictitious name for the National Organization for Children Inc. and Tutorbots Inc. are capitalized by personal loans for the Mandel's relatives. Einstein had approximately $31,000 on deposit on July 31, 2001. Einstein had apparently anticipated receiving $825,000 from the education department as seed money that was not forthcoming. To begin cash flow, Einstein charged an $87.00 registration fee to some students who have enrolled which may violate 24 P.S. §17-1725-A. Einstein has also billed school districts, including plaintiff and intervenors herein, for June and July of 2001 even though Einstein has not provided any instruction. Approximately $20,000 has been received from school districts.

On August 24, 2001 Einstein ordered $2,407,492 in computer equipment from Compaq Computers. On August 31, 2001, Einstein received $506,000 from the education department. The record clearly establishes that Einstein is undercapitalized.

Einstein presently claims to have 3,000 students enrolled. Einstein also claims to have hired between 20-30 teachers, although signed contracts for only 13 were produced. Only seven teachers have been determined to be certified. The Charter School Law requires 75 percent certification. Teachers are to receive salaries ranging from $31,000 to $55,000.

Einstein also appears to be in breach of its charter agreement with Morrisville. By letter dated September 6, 2001, the solicitor for Morrisville was requesting the

following from Einstein: a course study for every course; a copy of Einstein's disciplinary code; a copy of the school calendar; copies of employment contracts with personnel and any employment policies; the names, positions, social security numbers and *certification* (solicitor's emphasis) of employees; evidence of health care benefits of employees; Act 111 background checks of all employees; Einstein's business manager or administrator; financial documents showing budget and cash flow; an audit review from a CPA; insurance coverage documentation; an accountability agreement covering pupil performance; fiscal management, 2001-2002 budget; schedule of budget meetings for 2002-2003; financial audit requirements and financial documents showing pension payments, payroll tax payments, insurance coverage and loan payments and terms.

Apparently, based upon the above letter, Morrisville had not received copies of contracts entered into by Einstein, didn't know the board of directors, extracurricular activities, attendance taking procedures, special education audits or even Einstein's schedule of board meetings. Einstein is scheduled to start classes on September 11, 2001.

It is with this factual background that this court must consider the application for special relief.

## LEGAL ANALYSIS

The following must be demonstrated for a preliminary injunction to issue: (1) Petitioner's right to relief is clear; (2) The injunction is necessary to prevent immediate and irreparable harm not compensable by damages; (3) Greater injury would result by refusing the injunction

than by granting it; (4) The injunction restores the parties to the status quo; and (5) The activity sought to be restrained is actionable and the injunction is reasonably suited to abate such action. *Singzon v. Commonwealth of Pennsylvania, Department of Public Welfare,* 496 Pa. 8, 10, 436 A.2d 125, 126 (1981). The plaintiff must establish each of these elements to prevail.

## 1. *Clear Right/Reasonable Likelihood*

In its complaint, plaintiff raises the following causes of action: charter schools/cyber schools are unconstitutional; cyber schools are not authorized by the Charter School Law; Einstein was not properly chartered; Einstein is not in compliance with the Charter School Law.

The court decides the issue of clear right only with respect to the preliminary injunction and not as a disposition on the merits.

As noted by the Honorable Judge Morgan in the case of *Pa. School Board Association v. Zogby,* no. 213 M.D. 2001 (May 10, 2001) a trial court opinion of the Commonwealth Court, these issues raise numerous questions of first impression. However, this court is persuaded that some of plaintiff's issues have a reasonable likelihood of success on the merits.

The Charter School Law was enacted before the explosion of Internet technology. It is doubtful that the framers of the legislation contemplated the "cyber" or Internet learning school to be within the scope of charter schools. The court found persuasive the testimony of Joseph F. Bard, executive director of the Pennsylvania Associa-

tion of Rural and Small Schools, who testified that cyber schools in general, and Einstein, in particular are merely home schooling by another name and are not entitled to public money as charter schools. This court also believes that plaintiff has established a clear right to relief on the issue of whether Einstein was validly chartered by Morrisville and/or whether it is in breach of the charter agreement. There is a serious question of the propriety of Morrisville essentially selling a charter in return for "head money" per student and an exclusivity provision. Also, Einstein is obviously in breach of its charter agreement.

## 2. *Immediate and Irreparable Harm*

The BASD must also show that denial of the injunction would result in immediate and irreparable harm not compensable by damages.

The violation by Einstein of an express statutory provision, here the Charter School Law, per se constitutes irreparable harm. *Pa. Public Utility Commission v. Israel,* 356 Pa. 400, 52 A.2d 317 (1947). Contrary to Einstein's arguments, this case is not about money damages. Obviously, BASD and intervenors will not suffer irreparable financial harm if an injunction is not granted. Plaintiff's expert, Mr. Bard, testified that Einstein cannot deliver the education program it says it can. Testimony established that Einstein has only seven certified teachers. As noted above, Einstein is in serious breach of its charter agreement. Only three of the students registered for Einstein in the BASD are home schooled. The remaining students in the BASD enrolled in Einstein are regular students. Irreparable harm would result if Einstein

is permitted to begin classes as scheduled on September 11, 2001, because it cannot provide a viable educational program to students currently enrolled.

### 3. *Balancing of Harms*

The harm to Einstein by preventing it from providing an education to students of the BASD and intervenors is outweighed by Einstein's violation of its charter agreement and its apparent inability to provide education to the students of the school districts of Butler County involved herein.

### 4. *Status Quo*

The status quo is not disturbed by the continuance of the injunction. The status quo is that Einstein is presently not providing education to students in Butler County. Students presently home schooled will continue in that status. Other students enrolled at Einstein will attend their respective schools in Butler County.

### 5. *Abatement of Actionable Activities*

An equity court has broad powers of discretion in "shaping its decree and granting relief tailored to the particular circumstances of the case" pursuant to a party's prayer for general relief. *Lower Frederick Twp. v. Clemmer,* 518 Pa. 313, 332, 543 A.2d 502, 512 (1988).

The continuance of the injunction will abate, for the present, Einstein providing education to the students of BASD and intervenors until such times as this court decides the merits of the pending claims.

Accordingly, the special injunctive relief granted August 9, 2001 is continued and the following order is entered:

## ORDER

And now, September 10, 2001, after a hearing to determine whether the special injunctive relief granted to petitioner should be continued or dissolved, and in accordance with the opinion contemporaneously filed, it is ordered that the petition to intervene filed on behalf of the Mars Area School District, the South Butler School District and the Karns City Area School District is granted.

It is further ordered that, until further order of court, the Einstein Academy Charter School is preliminarily enjoined from providing education to students within the Butler Area School District, the Karns City Area School District, the Mars Area School District and the South Butler School District. Einstein shall not bill for any such educational services or attempt to collect any bills previously sent to the school districts.

It is further ordered that the Einstein Academy Charter School shall return any registration deposits to the students of these school districts.