J-A03022-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ESTATE OF CARY H. SIMPSON, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOHN FREDERICK SIMPSON | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 122 WDA 2018 |

Appeal from the Order Entered December 19, 2017
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
No. 2017 OC 11

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                               FILED MAY 31, 2019

Appellant, John Frederick Simpson, appeals from the order entered December 19, 2017, denying his petition to set aside and vacate the court order of June 1, 2017.  After careful review, we affirm.

Cary H. Simpson ("Decedent") died on December 27, 2016.  Orphans' Court Opinion, 12/19/17, at 3.  Decedent had a will, dated April 16, 2014, which named two heirs:  1) son, Appellant; and 2) daughter, Barbara Simpson Becker ("Barbara").  Id.; Will of Cary Simpson, 4/16/14, at 1-3.  In his will, Decedent made the following specific bequests of real property.  To Appellant, Decedent bequeathed two properties:  1) 10527 Schoolhouse Hollow Road, Huntingdon, PA ("Henderson Township Property"), a family cabin wherein Appellant lived at the time of the proceedings while separated from his wife; and 2) 201 Shelton Avenue, Alexandria, PA, a home Decedent had purchased

_____
*   Retired Senior Judge assigned to the Superior Court.

for Appellant and his family, and for which Appellant had procured a promissory note with Decedent as a co-signor, thereby obligating the estate with this debt. Orphans' Court Opinion, 12/19/17, at 3-4. Barbara was bequeathed two properties as well: 1) 601 5th Street, Tyrone, PA; and 2) 5620 Rear East Pleasant Valley Boulevard, Tyrone, PA. Id. at 3. The residuary estate was to be distributed equally to Appellant and Barbara. Id.

The will was admitted to probate by the Register of Wills of Blair County, and Letters Testamentary were issued on January 5, 2017, to John J. Hoyne, Executor ("Executor"), of Decedent's estate ("Estate"). Letters Testamentary, 1/5/17, at 1. On January 10, 2017, Executor filed a petition to permit Executor to continue to operate and expend funds for the WTRN AM and FM Radio Station of the Allegheny Mountain Network, an asset of the Estate, for a period of one year. The parties subsequently agreed to that request and the orphans' court entered an order on May 3, 2017, reflecting same. Eventually, the Estate sought to sell the radio station and related property, noted infra.

On February 13, 2017, Executor filed a petition for order of court for judicial sale of real estate and for order of court for personal representative to take possession of real estate occupied by devisee (Appellant) to protect rights of creditors/claimants. Appellant filed an answer on April 24, 2017. A hearing was conducted on May 3, 2017, and scheduled for completion on June 1, 2017. Order, 5/9/17, at 1. At the June 1, 2017 hearing, the parties indicated they

had arrived at an agreement and presented a prepared order memorializing the terms. The orphans' court entered that order on the same date. In that order, the orphans' court granted the Estate's request to sell the following properties: the Henderson Township Property, with right of first refusal given to Appellant; 5620 Rear East Pleasant Valley Boulevard, Tyrone, PA 16686; and 601 Fifth Street, Tyrone, PA 16686. The real property at 201 Shelton Avenue, which was specifically bequeathed to Appellant, was not included in the sale.

On July 6, 2017, the Estate filed a petition for preliminary injunction against Appellant to cease and desist attempts to interfere with the contracted sales of Radio Station WTRN and the radio station's real estate. Appellant filed an answer to the preliminary injunction on July 18, 2017. The court conducted a hearing on July 20, 2017, and granted the injunctive relief.

On July 24, 2017, Appellant filed a petition to set aside and vacate the court order of June 1, 2017. In that petition, Appellant asserted that subsequent to the June 1, 2017 order, Appellant learned that a purchase and sale agreement for WTRN radio station and the WTRN property had been entered,[1] and that the Estate had received an offer for the purchase of Decedent's residence. The Estate filed an answer and new matter on August 2, 2017, admitting that the radio station and real estate were under

_____

[1] The radio station was sold on August 31, 2017.

- 3 -

contract, that there was an offer for the Decedent's residence, and that a sales agreement had been entered into with a third party for the Henderson Township Property. The court held hearings on September 11, 2017, and October 30, 2017. On December 19, 2017, the orphans' court entered an order denying Appellant's petition to set aside and vacate the June 1, 2017 order.

In the December 19, 2017 opinion and order, the orphans' court made the following findings of fact, in relevant part:

> 1. [Decedent] died December 27, 2016 testate with a will dated April 16, 2014 which named 2 heirs, son [Appellant] and daughter, [Barbara].
>
> 2. [Decedent] made specific bequests:
>
> To: [Appellant]
>
> > a. [Henderson Township Property]
> >
> > b. 201 Shelton Avenue, Alexandria, PA
>
> To: [Barbara]
>
> > a. 601 5th Street, Tyrone, PA
> >
> > b. 5620 Rear East Pleasant Valley Boulevard, Tyrone, PA.
>
> 3. Residuary Estate consists of:
>
> > a. WTRN Radio Station - sold     $ 90,000.00
> >
> > b. Forever of PA, Inc. consulting Agreement:     $350,000.00
> >
> > $12,500/m x 28 installments (current)

| | |
|---|---|
| c. Magnum Sales agreement | $294,588.59 |

$4,250/month (very sporadic payments)

| | |
|---|---|
| d. Laurel Media Inc. Sales agreement | $120,000.00 |

$30,000/annually for 4 years (current)

| | |
|---|---|
| e. Bank accounts and personal property | $78,594.50 |
| TOTAL | $638,594.50 |

4. Debts of the Estate

| | |
|---|---|
| a. First National Bank article Of agreement (201 Shelton Ave.) | $188,906.00 |
| b. Reliance Bank - HELOC | $114,855.00 |
| c. Credit Cards | $75,269.92 |
| d. Personal representative (estimate) | $55,000.00 |
| e. Attorney fees (estimate)[4] | $98,000.00 |
| TOTAL | $343,124.92 |

[4] This estimate includes attorney fees for both the [E]state and the expert/specialized fees of Attorney Paxon for the sale of the WTRN radio station.

5. [Henderson Township Property] is a family Cabin held for many generations and is where [Appellant] lives while currently separated from his wife.

6. 201 Shelton Avenue, Alexandria, PA is a home [Decedent] bought for [Appellant] (and family) and [Appellant] procured a promissory note with that property for approximately $188,000.00 with [Decedent] as co-signor, thereby eventually obligating the [E]state on this debt.

7. [Barbara] disclaimed her interest in any specifically devised property[5] (given to her by [Decedent's] will) on April 11, 2017 and said disclaimer was recorded of public record in the Blair County Records of Deeds Office on April 11, 2017, which preceded the June 1, 2017 agreed upon court order.

[5] The disclaimer included the specifically bequeathed properties of 601 5th Street and 5620 Pleasant Valley Boulevard rear, both of Tyrone only.

8. The [E]state operated the WTRN radio station before its sale, at a loss, which required [E]state expenditures of the limited available cash.

9. The disclaimer of [Barbara] created a critical cash infusion to the [E]state for expenditures.

10. Ninety-four percent (94%) of the [E]state debt has not been paid for over 1 year, due to insufficient liquid funds.

Orphans' Court Order, 12/19/17, at 3-5.

On December 29, 2017, Appellant filed a motion for reconsideration, which was not ruled on by the orphans' court. Appellant filed a notice of appeal on January 18, 2018.[2] The orphans' court did not order the fling of a Pa.R.A.P. 1925(b) statement. The orphans' court filed a letter on March 2, 2018, indicating that it was relying on its opinion and order of December 19, 2017.

Appellant presents the following issues for our review:

I. Did the [orphans'] court err and/or abuse its discretion in failing to effectuate the decedent's intent as clearly set forth in his

_____

[2] On January 23, 2018, the orphans' court entered an order indicating that the order signed January 8, 2018, granting Appellant's motion for reconsideration, was vacated as "improvidently entered." Order, 1/23/18, at 1. There is no docket entry, however, reflecting a January 8, 2018 order.

Last Will and Testament when there was no justification or necessity for doing so?

II. Did the [orphans'] court err and/or abuse its discretion in ordering the sale of real estate specifically devised to the Appellant in the decedent's Last Will and Testament when there were sufficient residuary assets in the Estate to satisfy all of the debts, obligations and expenses of the Estate within a reasonable period of time?

III. Did the [orphans'] court err and/or abuse its discretion in failing to vacate the prior consent order that was entered into on a mutually mistaken belief that the sale of the property specifically devised to the Appellant was necessary for the proper administration of the decedent's Estate?

IV. Did the [orphans'] court err and/or abuse its discretion in failing to vacate the prior consent order when the facts and circumstances of the case clearly established that the decedent's intent was capable of being effectuated without requiring the sale of the property specifically devised to the Appellant?

Appellant's Brief at 4-5.

Our standard of review is well settled:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the [o]rphans' [c]ourt's findings, our task is to ensure that the record is free from legal error and to determine if the [o]rphans' [c]ourt's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

In re Estate of Bechtel, 92 A.3d 833, 837 (Pa. Super. 2014).

Because they are interrelated, we address Appellant's first two issues together. Appellant argues that the orphans' court erred or abused its discretion in failing to effectuate the decedent's intent as set forth in his will. Appellant's Brief at 20. Appellant asserts that the will devised specific real estate assets to each of his two children and provided for the division and distribution of the residuary estate to each. Id. Moreover, Appellant posits, the will stated that the Estate's debts and expenses were to be paid from the residuary estate. Id. at 21. Because the residuary assets were more than sufficient to meet the Estate's debts and obligations, Appellant contends, there was no need or justification for selling the specifically devised properties and deviating from Decedent's will. Id. at 21-22, 22-32.

In interpreting a will, this Court has stated: "The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail." In re Estate of Davis, 128 A.3d 819, 821 (Pa. Super. 2015). We are cognizant, however, of the following Probate, Estates and Fiduciaries Code ("Code") provisions: "If the applicable assets of the estate are insufficient to pay all proper charges and claims in full, the personal representative, subject to any preference given by law to claims due the United States, shall pay them [in particular order as outlined in the statute]." 20 Pa.C.S. § 3392. Further, "the costs delineated in Section 3392, are paid prior to distribution to beneficiaries." In re Estate of Davis, 128 A.3d at 822 n.2; see 20 Pa.C.S. § 3541 (delineating order of distribution to pay claimants

- 8 -

and distributees if assets are insufficient to pay all claimants and distributees in full).

Furthermore, Section 3353 of the Code provides as follows:

When the personal representative is not authorized to do so by this title or is denied the power to do so by the governing instrument, if any, or when it is advisable that a sale have the effect of a judicial sale, he may sell any real or personal property of the estate, including property specifically devised, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the orphans' court division of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate.

20 Pa.C.S. § 3353.

Thus, while Decedent's intent as outlined in the will must be complied with to the extent possible, compliance with all provisions herein was not possible due to the shortfall in Estate assets. The evidence of record supports the orphans' court's conclusion that there were insufficient funds in the residuary estate to pay for the Estate's costs and expenses, contrary to Appellant's claims. The orphans' court made the following determinations:

[T]he [c]ourt held [a] hearing on May 3, 2017 and the transcript of proceeding provides evidence that the [E]state had a shortfall of approximately $247,000.00 (hrg.tr. 5-3-17 p. 28-29) if they did not liquidate the unencumbered asset of [the Henderson Township Property].[6] The testimony was not completed and another hearing was set for June 1, 2017.[7]

[6] Additionally the withdrawal by [Appellant] of $114,000.00 cash from [D]ecedent's bank account one day after [D]ecedent's death has deprived the

[E]state of that available cash without full development of the reason for such a transaction.

7 The transcript reflects that the [E]state intended to call at the next hearing witnesses to testify that substantial cash deposits were made into a FNB checking account of [D]ecedent the week before [Decedent's] death and the day after his death [Appellant] withdrew $114,000.00. This issue has been noted by both parties during proceedings and will undoubtedly lead to further litigation as [Appellant's] counsel has stated [Appellant] had specific valid reasons for doing so. However, no evidence or testimony of those reasons is reflected through the direct or cross examination eventually given by FNB bank personnel as to the deposits and withdrawals by [Appellant], after the death of his father.

At the June 1, 2017 hearing, counsel made clear to the court the parties had negotiated the agreed upon order. The terms were described on the record, the court conducted an extensive colloquy of both litigants, [Appellant] and Executor Thomas Hoyne and proceeded to dictate publicly the terms of the agreement entered by order of June 1, 2017.

Orphans' Court Opinion, 12/19/17, at 6-7. The record supports the summary of evidence as presented by the orphans' court.

Accordingly, pursuant to 20 Pa.C.S. § 3392, the costs and expenses of the Estate must be paid before distributions are made to the beneficiaries. Thus, although Decedent's will provided for his intent to bequeath his property to his children, the costs and expenses first must be paid. Furthermore, pursuant to Section 3353, the personal representative is authorized to sell the real property specifically bequeathed when necessary to administer an estate.

In resolving Appellant's issues, the orphans' court explained:

Both parties agree that a testator's intent regarding a specific bequest must be highly regarded and honored and should only be disturbed when necessary for the "proper administration and distribution of the estate". See 20 Pa.C.S.A. § 3353. In this instance the approximately $347,000.00 debt of this estate cannot be met without the sale of [the Henderson Township Property]. The pushed-out payments that inflate estate assets include an installment sale to Magnum Broadcasting which accounts for approximately $300,000.00 in the inventory of assets of this estate. The contract requires Magnum to pay the [E]state approximately $4,000/month and they only made one payment in 2016 and only made two payments for the year 2017. Any efforts of debt collection will adversely affect the FCC license of Magnum, making any future collections virtually impossible with the closure of the business.

These unique factual circumstances do not warrant a delay in creditors receiving their timely claims due from this estate. We are regrettably constrained to find the sale of [the Henderson Township Property] necessary.

We acknowledge the strong emotional attachment [Appellant] has to the "cabin" or [the Henderson Township property]. For this reason he negotiated an opportunity to buy it and will continue to have right of first refusal with the reinstatement of our June 1, 2017 order. It is regrettable the estate planning of the [D]ecedent was not able to predict the effect of the push-out payments and its cash impact for the [E]state. We take note however, that [Appellant] will retain his other specifically bequeathed property at 201 Shelton Avenue, Alexandria.

In summary, at the conclusion of the October 30, 2017 hearing, the [E]state owed $347,000.00 in debt and had $36,000.00 in the [E]state bank account. The [E]state has met their burden of proof beyond all doubt as to the need to liquidate the only unencumbered property for the proper administration of this estate.

Orphans' Court Opinion, 12/19/17, at 10-11 (emphasis in original).

We agree. The evidence of record was more than sufficient to establish that the Estate had debts in excess of the assets of the residuary estate. The expenses and costs were required to be paid before any assets were distributed, and Section 3353 of the Code authorizes the personal representative to sell real property when necessary for the proper administration of the Estate. Thus, the orphans' court did not err or abuse its discretion in determining that the sale of the Henderson Township Property was necessary in order for the Estate to be properly administered.

We address Appellant's remaining two issues together. Appellant asserts that the orphan's court erred or abused its discretion in failing to vacate the June 1, 2017, consent order. Appellant's Brief at 33. Appellant argues that at the May 3, 2017 hearing, the Executor of the Estate provided a dismal portrayal of the Estate, indicating a significant shortfall of assets that could not be met by future payments due the Estate. Id. Based on this information, Appellant contends, when the parties appeared before the orphans' court on June 1, 2017, Appellant and the Executor entered into a consent order whereby the properties specifically devised to Barbara, and the Henderson Township property specifically devised to Appellant, would be offered for sale. Id. According to Appellant, however, neither he nor his counsel was aware that Barbara had previously disclaimed and renounced her interest in the properties devised to her, thereby permitting the sale proceeds to be added to the residuary estate. Id. at 33-34. Appellant further posits

that there was no mention at the June 1, 2017 proceeding that the Estate had already entered into a sales agreement for the WTRN radio station and property two days earlier on May 30, 2017. Id. at 34. Appellant contends that as a result of these transactions, there were sufficient assets in the residuary estate to meet the Estate's obligations without ordering the sale of the Henderson Township property. Id. at 34-36. Accordingly, Appellant contends, he agreed to sell the property due to his erroneous belief that the sale of the Henderson Township property was necessary, and therefore, the June 1, 2017 consent decree should be set aside. Id. at 34-37.

Our Supreme Court has stated the following with regard to consent decrees:

> A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties thereto to the terms thereof[.] As a contract, the court, in the absence of fraud, accident or mistake, had neither the power nor the authority to modify or vary the terms set forth....

Lower Frederick Tp. v. Clemmer, 543 A.2d 502, 510 (Pa. 1988). "Since a judgment by consent is regarded as a contract between the parties, it must be construed the same as any other contract." Id.

The orphans' court provided the following analysis on this issue:

> [Appellant] participated in the May 3, 2017 hearing which fully outlined the [cash] deficit of the [E]state and the [E]state['s] intent to sell the radio station. He had full knowledge of the $12,500/month payments made by Forever of Pa., Inc. as he benefitted from half of that sum each month (and his sister received half) since 2009. Executor Hoyne testified that he continued to honor that practice of the [D]ecedent and was trying

to not call that cash back to the [E]state.[9] (hrg. Tr. 5-3-17 p. 17)[.]

[9] In fact, the half payment due to [Appellant,] the [E]state began to apply to the promissory note [Appellant] took against the Shelton Avenue home purchased by [Decedent]. This helped to reduce the $188,000.00 + debt owed by the [E]state since [D]ecedent co-signed for that note which also involved a concurrent mortgage against a property valued at only $120,000.00.

The agreement of June 1, 2017 gave [Appellant] a 45-day window to purchase [the Henderson Township property] and have a right of first refusal thereafter. The fact that [Appellant] did not or could not purchase the property in that 45-day window (or over the last six months with any sale on hold due to this litigation) does not provide an opportunity for him to rewrite the agreement. Accordingly, [Appellant] has provided no basis of fraud or mistaken belief that rises to any level required to set aside his agreement: See, Lundy v Manchel, 865 A.2d 850 (Pa. Super. 2004). Buyer's remorse is not the equivalent of a legal basis to reverse an otherwise valid agreement which was confirmed by court order.

Even should this court find a threshold basis to set aside the agreement, the outcome would be the same based upon the testimony and facts provided at the September and October hearings on the Petition to Set Aside the Agreement.

[Appellant] presented a carefully calculated proposal for payment of [E]state debts within an additional 12-month period, assuming the "pushed out" payments were received and the $12,000/month consulting fee money would be paid to the [E]state and not the heirs as the decedent had done since 2009.[11] Unfortunately, such calculation did not take into account the pending personal representative fees and attorney fees which pursuant to 20 Pa.C.S.A.§ 3392 have first priority before any other claims.

[11] The testimony of executor Thomas Hoyne indicated the consulting fee money actually is the property of the [E]state but he has tried to honor the past practice of [Decedent] to provide income to the

- 14 -

children, heirs of the [E]state (hrg.tr. 5-3-17 p. 17)
as stated previously.[3]

Orphans' Court Opinion, 12/19/17, at 8-9. The orphans' court's determination is supported by the evidence of record.

Although Appellant appears to assert that the consent decree was entered into as a result of his mistaken understanding of the status of various Estate assets, Appellant has not proven fraud, accident, or mistake that would permit the court's intervention. In fact, the orphans' court stated that Barbara's disclaimer of the property specifically bequeathed to her was recorded of public record in the Blair County Records of Deeds Office on April 11, 2017, which preceded the June 1, 2017 agreed-upon consent order. Orphans' Court Opinion, 12/19/17, at 5. Accordingly, because Appellant has failed to establish fraud, accident, or mistake, there was no basis to vacate the order, and indeed, the orphans' court lacked the power and authority to modify the terms of the consent order. Lower Frederick Tp., 543 A.2d at 510.

Further, although Appellant maintains that the sale of the property bequeathed to Barbara and the sale of the WTRN radio station and property would result in sufficient assets in the residual estate to cover the Estate's expenses and costs, thereby not necessitating the sale of the Henderson

_____

[3] It appears from the context of the orphans' court's opinion, footnote 10 was improperly labeled and was in fact footnote 11. The orphans' court, although indicating the existence of footnote 10, did not include related text.

Township property, Appellant fails to establish that contention. Indeed, the orphans' court stated in its opinion, based on its findings following the September and October hearings on Appellant's petition to set aside the agreement, that there were additional expenses for which Appellant did not account. Orphans' Court Opinion, 12/19/17, at 9.

Additionally, assets that Appellant includes in his calculation of the residual estate were not assets possessed by the Estate at the time of the hearings. During argument, Appellant claimed that monthly payments by Magnum Broadcasting were outstanding and owing to the Estate, and that those payments would be available to pay outstanding obligations. N.T., 9/11/17, at 13. As the orphans' court observed with regard to these payments, however,

> [t]he pushed-out payments that inflate [E]state assets include an installment sale to Magnum Broadcasting which accounts for approximately $300,000.00 in the inventory of assets of this [E]state. The contract requires Magnum to pay the [E]state approximately $4,000/month and they only made one payment in 2016 and only made two payments for the year 2017. Any efforts of debt collection will adversely affect the FCC license of Magnum, making any future collections virtually impossible with the closure of the business.

Orphans' Court Opinion, 12/19/17, at 10.

Furthermore, Appellant included in his calculation of Estate assets future anticipated payments from Laurel Media Inc., which owed a total of $120,000.00, paid at $30,000.00 per year. N.T., 10/30/17, at 5, 27.

Testimony provided at the hearing raised the uncertainty of receipt of those anticipated future payments. Id. at 21.

Thus, given the unaccounted-for expenses and potential lack of anticipated assets, the sale of the properties bequeathed to Barbara[4] and the sale of the radio station and property, without the sale of the Henderson Township property, would not necessarily have resulted in sufficient residuary assets to cover the Estate's expenses. Accordingly, we cannot agree that Appellant was mistaken in his belief that sale of the Henderson Township property was necessary for proper administration of the Estate. To the contrary, the evidence of record supports the conclusion that at the time of the hearing, without the sale of the Henderson Township property there was a shortfall of residual assets. Appellant's reliance on anticipated future payments in calculating Estate assets was insufficient to establish that the Estate had sufficient assets to pay its expenses and debts without the sale of the Henderson Township property. Thus, the orphans' court did not err in denying Appellant's request to vacate the June 1, 2017 consent order. Appellant's claim lacks merit.

Order affirmed.

_____

[4] Again, we note the orphans' court's findings of fact indicating that Barbara's disclaimer of property specifically bequeathed to her was recorded of public record in the Blair County Records of Deeds Office on April 11, 2017, which preceded the June 1, 2017 agreed upon court order. Orphans' Court Opinion, 12/19/17, at 5.

- 17 -

Judge Bowes joins this Memorandum.

Judge Strassburger files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/31/2019